MST EXPRESS and Truckers United
for Safety, Petitioners,

v.

DEPARTMENT OF TRANSPORTATION
and Federal Highway Administration,
Respondents.

No. 96–1084.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 3, 1996.

Decided March 18, 1997.

Anthony J. McMahon, Trenton, NJ, argued the cause and filed the briefs for petitioners.

Edward R. Cohen, Attorney, U.S. Department of Justice, Washington, DC, argued the cause for respondents, with whom Frank W. Hunger, Assistant Attorney General, and Robert S. Greenspan, Attorney, were on the brief.

Before: SILBERMAN, WILLIAMS, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

MST Express and Truckers United for Safety petition for review of an order in which the Federal Highway Administration denied both their administrative petition for review of MST's "conditional" safety rating and their challenge to the lawfulness of the FHWA's safety regulation procedures. The petitioners contend that the agency improperly relied upon an unpublished regulation to determine MST's safety fitness rating, contrary to the requirements of 49 U.S.C. § 31144 and of the Administrative Procedure Act, 5 U.S.C. § 553, and failed to develop specific deadlines for making safety fitness determinations, as required by 49 U.S.C. § 31144(a)(1)(C). The petitioners also contend that the evaluation procedure set out in the agency's unpublished regulation is not

administered even-handedly and is therefore arbitrary and capricious.

We conclude that FHWA has indeed failed to meet its statutory obligation under 49 U.S.C. § 31144 to prescribe by regulation a means of determining whether an owner or operator of a commercial motor vehicle satisfies the agency's safety fitness requirements. Although the FHWA has developed a method for making safety rating determinations, this method was not promulgated through notice and comment rulemaking. Because the FHWA relied upon an improperly promulgated regulation when it determined MST's safety rating, MST's rating cannot stand. Accordingly, without reaching the petitioners' other objections, we vacate the agency's decision giving MST a conditional safety rating.

## I. BACKGROUND

The Motor Carrier Safety Act directs the Secretary of Transportation (who has delegated the responsibility to the FHWA) to "prescribe regulations establishing a procedure to decide on the safety fitness of owners and operators of commercial motor vehicles, including persons seeking new or additional operating authority...." 49 U.S.C. § 31144(a)(1). This procedure is to include:

(A) specific initial and continuing requirements to be met by the owners, operators, and persons to prove safety fitness;

(B) a means of deciding whether the owners, operators, and persons meet the safety fitness requirements under clause (A) of this paragraph; and

(C) specific time deadlines for action by the Secretary in making fitness decisions.

49 U.S.C. § 31144(a)(1). This case concerns primarily the second of these three requirements. The petitioners argue that this statute requires notice and comment rulemaking, and the FHWA does not contest that interpretation.

### A. The Regulatory Framework

In accordance with the statutory directive quoted above, the FHWA promulgated through notice and comment rulemaking procedures the Motor Carrier Safety Regula-

tions codified at 49 C.F.R. Part 385. These regulations provide that the FHWA shall assign to a motor carrier a safety rating—satisfactory, conditional, or unsatisfactory—in this way:

Following a safety or compliance review of a motor carrier operation, the FHWA, using the factors prescribed in § 385.7, shall determine whether the present operations of the motor carrier are consistent with the safety fitness standard set forth in § 385.5, and assign a safety rating accordingly.

49 C.F.R. § 385.9. Section 385.7 lists a number of factors that the agency considers in determining a motor carrier's safety rating, such as the adequacy of safety management controls; the frequency and severity of regulatory violations; the number and severity of violations of state safety rules; and the frequency of accidents and "hazardous materials incidents." Section 385.5 makes the resulting safety rating a function of the carrier's "degree of compliance with the safety fitness standard," and provides that:

To meet the safety fitness standard, the motor carrier shall demonstrate that it has adequate controls in place, which function effectively to ensure acceptable compliance with applicable safety requirements to reduce the risk associated with:

(a) Commercial driver's license standard violations (part 383),

(b) Inadequate levels of financial responsibility (part 387),

(c) The use of unqualified drivers (part 391),

(d) Improper use and driving of motor vehicles (part 392),

(e) Unsafe vehicles operating on the highways (part 393),

(f) Failure to maintain accident registers and copies of accident reports (part 390),

(g) The use of fatigued drivers (part 395),

(h) Inadequate inspection, repair, and maintenance of vehicles (part 396),

(i) Transportation of hazardous materials, driving and parking rule violations (part 397),

(j) Violation of hazardous materials regulations (parts 170 through 177), and (k) Motor vehicle accidents and hazardous materials incidents.

Section 385.3 further provides that a carrier shall receive a "satisfactory" safety rating if it "has in place and functioning adequate safety management controls to meet the safety fitness standard prescribed in § 385.5." Safety management controls are adequate if they are "appropriate for the size and type of operation of the particular motor carrier." § 385.3. A carrier receives a "conditional" safety rating if it "does not have adequate safety management controls in place to ensure compliance with the safety fitness standard that could result" in safety violations of the type listed in § 385.5. Finally, a carrier receives an "unsatisfactory" safety rating if it "does not have adequate safety management controls in place to ensure compliance with the safety fitness standard which has resulted" in the types of safety violations listed in § 385.5.

Once the FHWA had promulgated Part 385 the agency went on to develop a "safety fitness rating methodology" (SFRM), which it published as part of its Motor Carrier Training Manual and which it makes available to the public, upon request, in a 15–page document entitled "Explanation of Safety Rating Process." The Explanation proclaims that the SFRM, which was not the product of notice and comment rulemaking, "conforms with 49 C.F.R. 385.5–Safety fitness standard and § 385.7–Factors to be considered in determining a safety rating." The SFRM itself provides FHWA inspectors with detailed guidelines for deriving a motor carrier's safety rating from the data obtained from a compliance review.

Central to the SFRM are "factor ratings." In the SFRM the Federal Motor Carrier Safety Regulations and the applicable Hazardous Material Regulations are grouped into five regulatory areas, or "factors," to wit: General (Parts 387 and 390), Driver (Parts 382, 383, and 391), Operational (Parts 392 and 395), Vehicle (Parts 393 and 396), and Hazardous Material (Parts 177 and 397). There is also an Accident Factor, which does not relate to any specific regulation but rather concerns a carrier's "recordable preventable rate" of accidents.

Various safety regulations are classified in the SFRM as either "acute" or "critical." A regulation is acute if "noncompliance is so severe [as] to require immediate corrective actions by a motor carrier regardless of the overall safety posture of the motor carrier." A regulation is critical if "noncompliance relates to management and/or operational controls." The SFRM provides that the FHWA will assess a carrier one point for each instance of noncompliance with an acute or each pattern of noncompliance with a critical regulation, except that a pattern of noncompliance with a critical regulation concerning Part 395, Hours of Service of Drivers, is worth two points.

The SFRM instructs FHWA safety inspectors to assign the motor carrier a "factor rating" for each of the six factors (enumerated above). The "factor rating" depends upon the number of points assessed for acute and critical violations of the regulations grouped within each factor. The carrier receives a "satisfactory" rating on a factor for which there are no points assessed, a "conditional" rating for a factor with one point, and an "unsatisfactory" rating for a factor with two or more points.

The carrier's final safety rating depends upon the number of unsatisfactory and conditional factor ratings it received. For example, if a carrier has no unsatisfactory factor ratings and no more than two conditional factor ratings, then its overall safety rating is "satisfactory"; if a carrier has no unsatisfactory factor rating but more than two conditional factor ratings, then its overall safety rating is "conditional."

The safety ratings are significant. They are made readily available to other federal agencies and to the public. Insurance companies use the ratings to make risk assessments and shippers consult the ratings when selecting a carrier. Moreover, while a carrier that receives a conditional rating is permitted to continue its normal operations, a carrier with an unsatisfactory safety rating may not transport certain hazardous materi-

als or more than 15 passengers. *See* 49 C.F.R. § 385.13.

Any carrier that is unsatisfied with its rating may petition the FHWA for review. § 385.15. The agency must notify the carrier in writing of the results of the review, and its decision "will constitute the final agency action." *Id.* at § 385.15(d).

## B. Factual Background

An FHWA inspector conducted a compliance review of MST's operations on April 5, 1995. At the end of his inspection he informed MST that, based upon ten different violations of safety regulations, he anticipated the carrier's safety rating would be "conditional." In a letter dated June 14, 1995 the FHWA confirmed that MST would have a conditional safety rating effective June 23, 1995.

MST petitioned the FHWA for review of this rating. The carrier argued that the rating was based upon inaccurate factual findings and that it should have been rated satisfactory. MST and TUFS later added a claim that the agency's procedures for rating a carrier's safety were invalidly promulgated. The petitioners also asked the FHWA to cease using those procedures and to promulgate new procedures through notice and comment rulemaking. The FHWA denied the petition by letter.

## II. ANALYSIS

On appeal the petitioners contend that the FHWA's safety regulations were not validly promulgated, are arbitrary and capricious, and violate MST's constitutional rights to due process and equal protection. In response, the FHWA maintains that the petition is both untimely and without merit.

## A. The Timeliness of the Petition

We first consider the FHWA's argument that the petition for review is untimely. The petition was filed 58 days after the FHWA issued the final order dismissing the petitioners' challenge to MST's safety rating. The agency argues that the timeliness of the present petition is determined by 49 U.S.C. § 521(b)(8), which requires that any petition

for review of a final order issued pursuant to 49 U.S.C. § 521 be filed within 30 days. The petitioners reply that their petition was filed pursuant to the Hobbs Act, 28 U.S.C. § 2344, which requires that any petition for judicial review be filed within 60 days from the entry of a final agency order. We agree with the petitioners; the petition is timely.

■ Absent congressional direction to the contrary, the motor carrier safety regulations of the FHWA are subject to the judicial review provisions of the Hobbs Act. *See Aulenback, Inc. v. FHWA,* 103 F.3d 156, 164–65 (D.C.Cir.1997); *Center for Auto Safety v. Skinner,* 936 F.2d 1315, 1316 (D.C.Cir. 1991). The Hobbs Act provides that a party has 60 days to seek judicial review of a rule, regulation, or final order of the Interstate Commerce Commission, *see* 28 U.S.C. § 2344, now the Department of Transportation.

The FHWA contends that 49 U.S.C. § 521 provides a superseding time limit for the review of administrative orders concerning the violation of any regulation promulgated pursuant to the Motor Carrier Safety Act. The FHWA here points to § 521(b)(8), which provides that "[a]ny aggrieved person who, after a hearing, is adversely affected by a final order issued under this section may, within 30 days, petition for review of the order ... in the United States Court of Appeals for the District of Columbia," and to § 521(b)(1)(A), which provides:

> If the Secretary of Transportation finds a violation of a provision of subchapter III of chapter 311 (except sections 31138 and 31139) or, section 31302, 31303, 31304, 31305(b), 31310(g)(1)(A), or 31502 of this title, or a violation of a regulation issued under any of those provisions, has occurred, the Secretary shall issue a written notice to the violator. Such notice shall describe with reasonable particularity the nature of the violation found and the provision which has been violated. The notice shall fix a reasonable time for abatement of the violation, specify the proposed civil penalty, if any, and suggest actions which might be taken in order to abate the violation.

The FHWA argues that the order under review is a final order under § 521 because the safety rating regulations, including 49 C.F.R. § 385.15, were promulgated under the authority of 49 U.S.C. § 31144, a provision of the self-same "subchapter III of chapter 311" to which § 521(b)(1)(A) adverts. In addition, the FHWA seems to argue that a less than satisfactory safety rating is functionally so similar to a civil penalty, in that each is a means of obtaining compliance with or redressing the violation of a safety regulation, that it comes within the intended coverage of § 521(b)(1)(A).

By its terms, however, § 521(b)(8)—and hence the 30–day time limit therein—applies only to a petition for review of "a final order issued under this section," i.e. § 521, and § 521(b)(1)(A) makes clear that it applies only to proceedings in which the Secretary seeks to abate and may seek a civil penalty for "a violation of a regulation issued under any of [various cited] provisions." Although one of those provisions is subchapter 311, which provides the statutory authority for the promulgation of 49 C.F.R. § 385.5, this is not an action by the Secretary to abate or to impose a civil penalty for a regulatory violation; rather, it is a proceeding to determine a carrier's safety rating. The procedures governing safety ratings and those for civil penalties are quite distinct. The safety rating procedures appear in 49 C.F.R. Part 385; in contrast, the procedures governing the adjudication of a safety violation appear in Part 386. A motor carrier that contests an alleged safety violation must be given a hearing before an administrative law judge, whereas a carrier that disputes its safety rating is not entitled to an administrative hearing at all; at most, the Director of the Office of Motor Carrier Field Operations may in his discretion schedule a conference with the motor carrier in order to discuss the safety rating. 49 C.F.R. § 385.15(c). Moreover, the regulations governing proceedings to abate a safety violation include a specific provision for judicial review that reiterates the language of § 521(b)(8): "Any aggrieved person, who, after a hearing, is adversely affected by a final order issued under this section may, within 30 days, petition for review of the order ... in the United States Court of Appeals for the District of Columbia." § 386.67. The procedures governing safety ratings do not, however, incorporate this same 30–day deadline for judicial review, and in fact contain no express provision for judicial review.

■ The judicial review provisions of § 521 would apply if, for example, the FHWA proposed to impose a civil penalty upon an operator that, notwithstanding an unsatisfactory safety rating, transported hazardous materials or more than 15 passengers, in violation of 49 C.F.R. § 385.17—a regulation promulgated pursuant to 49 U.S.C. § 31144; in fact, 49 C.F.R. § 385.13(b) specifically provides that "[a]ny motor carrier that operates commercial motor vehicles in violation of this section will be subject to the penalty provisions of ... 49 U.S.C. § 521." The FHWA has not, however, assessed a civil penalty against MST for violating one of the regulations in Part 385; rather, the agency has given MST a conditional safety rating, which the carrier wants to challenge. Accordingly, we hold that the judicial review provision of the Hobbs Act, 28 U.S.C. § 2344, governs the timeliness of this petition and that the petition was therefore timely filed.

## B. The Merits of the Petition

The petitioners contend that the FHWA's evaluation procedures for assigning safety ratings were adopted contrary to law. Specifically the petitioners argue that the FHWA did not, as the Congress directed in 49 U.S.C. § 31144(a)(1)(A)-(C), prescribe by regulation the "specific initial and continuing requirements" for safety fitness, the means used to determine whether carriers have met these requirements, and "specific time deadlines for action by the Secretary in making fitness decisions." The petitioners also claim that the FHWA improperly failed to promulgate the SFRM through notice and comment rulemaking. The FHWA argues that it has met its statutory obligations and that the SFRM is not subject to the notice and comment rulemaking requirements of the APA because it contains only interpretative rules.

The petitioners' primary argument is that the FHWA failed to promulgate regulations setting forth "a means of deciding whether the owners, operators, and persons meet the safety fitness requirements . . .," as required by 49 U.S.C. § 31144(a)(1)(B). The petitioners contend that this information can be found only in the SFRM, which the agency concedes was not promulgated pursuant to notice and comment rulemaking.

The FHWA nonetheless argues that the regulations it has promulgated through notice and comment rulemaking satisfy the statutory mandate because they explain the safety fitness standard and set out the factors and the means used to determine a motor carrier's safety rating. A motor carrier or operator looking at the current regulations cannot determine, however, what safety fitness rating it will receive. For example, it is not apparent from the regulations—as opposed to the SFRM—under what circumstances a carrier should expect to receive a conditional or an unsatisfactory rating. The regulations merely provide that a carrier's rating will be based upon the degree to which its safety management controls are "adequate," which the regulations define only as "appropriate for the size and type of operation of the particular motor carrier." The FHWA argues that a carrier can be sure of obtaining a satisfactory rating simply by complying with all safety regulations, but in fact the SFRM makes clear that a carrier need not be so punctilious in order to be rated satisfactory.

### III. CONCLUSION

We conclude that the FHWA has failed to carry out its statutory obligation to establish by regulation a means of determining whether a carrier has complied with the safety fitness requirements of the Motor Carrier Safety Act. Because in determining MST's safety rating the FHWA relied upon rules that were not promulgated pursuant to notice and comment rulemaking, as 49 U.S.C. § 31144(a)(1)(B) requires, we vacate the decision of the FHWA giving MST a conditional safety rating, without reaching the petitioners' other objections thereto, and remand the matter to the agency for such further action as it may wish to take consistent with the foregoing opinion.

*So ordered.*