# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 2, 2010

Lyle W. Cayce
Clerk

No. 09-40948

LA UNION DEL PUEBLO ENTERO; FRANCISCA ADAME; ALEJANDRO ALVARADO; ELIZABETH ALVARADO; MANUEL BENAVIDEZ; MARIA GALARDO; JOSE GONZALES; AUGUSTINA IGLESIAS; NOE JIMENEZ; VERONICA JIMENEZ; ERNESTO LOPEZ; NORMA LOPEZ; FRANCISCA PEREZ; ROSA ELIA VILLARREAL; CRUZ ALEJANDRO ZAMORA,

Plaintiffs - Appellees

v.

FEDERAL EMERGENCY MANAGEMENT AGENCY,

Defendant - Appellant

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

At issue in this case is the Federal Emergency Management Agency's (FEMA) administration of the home repair provisions of Section 408 of the Stafford Act, entitled "Federal Assistance to Individuals and Households" and codified at 42 U.S.C. § 5174. The district court issued a preliminary injunction requiring FEMA to publish standards that comply with § 5174(j). FEMA appealed, and this court issued a stay of the injunctive relief pending the

No. 09-40948

outcome of the appeal.  We now vacate the district court's grant of injunctive relief and remand the case.

I

This suit arose in the wake of Hurricane Dolly, which damaged thousands of homes in the Rio Grande Valley.  President Bush declared Dolly a major disaster, and FEMA made available housing assistance, including home repair under § 5174.  More than 38,000 families sought assistance from FEMA, which approved the distribution of $30 million under its "Individuals and Households Programs," including $25 million for housing assistance.

FEMA denied assistance to numerous homeowners, often by sending written explanation that denial was due to "insufficient damage" because "[b]ased on your FEMA inspection, we have determined that the disaster has not caused your home to be unsafe to live in.  This determination was based solely on the damage to your home that are [sic] related to this disaster."  The plaintiffs in this case comprise homeowners and a group representing homeowners who unsuccessfully challenged FEMA's determinations through the administrative appeals process.

Plaintiffs then filed the instant suit, pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*.  The Complaint alleges that FEMA violated 42 U.S.C. §§ 5151(a) and 5174(j) "by failing to adopt and implement ascertainable standards necessary to insure that housing repair assistance under 42 U.S.C. § 5174(c)(2) is made available to victims of Hurricane Dolly in an equitable and impartial manner."  It also alleges that FEMA's use of an unpublished "deferred maintenance policy" violates 42 U.S.C. § 5151(a) by promoting economic discrimination.  FEMA's failure to publish and apply ascertainable standards, Plaintiffs assert, is the proximate cause of ongoing irreparable injuries to Plaintiffs and their families.

No. 09-40948

Plaintiffs sought only injunctive relief. They asked the district court to: (1) "enjoin FEMA to publish and apply ascertainable standards to make its housing repair assistance decisions"; (2) "enjoin FEMA to reconsider all denials of housing repair assistance for Disaster No. 1780 [Hurricane Dolly] using the [new standards]"; (3) "enjoin FEMA to provide timely and adequate notice of its actions to applicants for home repair assistance"; and (4) "award Plaintiffs their costs and litigation expenses."

The district court granted a preliminary injunction based on § 5174(j), which the court found established mandatory, affirmative requirements on FEMA. The court rejected Plaintiffs' theory based on § 5151(a), which it found imposed only a discretionary burden on FEMA. The court noted that § 5174(j) "does not contain the same discretionary language," and that, while FEMA had "discretion to determine the content and specificity of the eligibility requirements," FEMA's housing eligibility regulations simply duplicated and failed to supplement the enabling statute. Section 5174(j), the court explained, "necessitates that FEMA's regulations include further criteria and standards of eligibility beyond those identified by federal law."

The district court performed the required preliminary injunction balancing test, finding that Plaintiffs had a likelihood of success on the merits, that there was a substantial threat that Plaintiffs would suffer irreparable injury without the injunction, that the threatened injury to Plaintiffs outweighed the damage the injunction would cause FEMA, and that the public interest favored the injunction. The court found "that if FEMA were to outline more specific criteria and standards for eligibility, decisions made by FEMA implementing eligibility requirements could increase the relief awards granted to some or many of the Plaintiffs, which would alleviate their injuries."

Having determined that a preliminary injunction was appropriate, the court enjoined FEMA to:

No. 09-40948

(1) publish definite and ascertainable criteria, standards, and procedures for determining eligibility for relief assistance beyond which is identified [sic] by federal law in compliance with the congressional mandate found in 42 U.S.C. § 5174(j); and
(2) reconsider Plaintiffs' applications for housing relief assistance for damage from Hurricane Dolly, Disaster No. 1780, using the ascertainable criteria, standards, and procedures for determining eligibility for relief assistance published in compliance with paragraph 1.
(3) within sixty (60) days of entry of this Order, file a proposed plan by which FEMA will comply with this Order, including what specific actions it plans and its proposed dates for completing each action. Plaintiffs shall have twenty (20) days to respond to FEMA's proposed plan with any objections.

FEMA filed an interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1) and moved to stay the injunction in this court. We granted the motion to stay and sua sponte expedited the appeal.

II

A preliminary injunction is an extraordinary remedy that should only issue if the movant shows: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest. *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008). "Although the ultimate decision whether to grant or deny a preliminary injunction is reviewed only for abuse of discretion, a decision grounded in erroneous legal principles is reviewed de novo." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (quotation omitted). "Each element of the injunction analysis typically involves questions of fact and law. The factual components of the decision are subject to a clearly-erroneous standard of review," while legal conclusions "are subject to broad review and will be reversed

4

No. 09-40948

if incorrect." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (citations and quotation omitted).

### III

### A

In their briefing, the parties primarily debate the district court's finding that Plaintiffs demonstrated a likelihood of success on the merits. We likewise find that this issue, which turns on whether FEMA has complied with § 5174(j), resolves the appeal.

Initially, the parties dispute whether § 5174(j) is a requirement to prescribe certain rules or a grant of authority that FEMA may or may not exercise. We agree with Plaintiffs that § 5174(j) requires FEMA to promulgate regulations. Subsection (j) is phrased in mandatory language, in contrast to other parts of the Stafford Act that give FEMA discretion about what regulations to create. *Compare* 42 U.S.C. § 5164 ("The President *may* prescribe such rules and regulations as *may* be necessary and proper to carry out the provisions of this chapter . . . ." (emphases added)), *with id*. § 5174(j) ("The President *shall* prescribe rules and regulations to carry out this section, including criteria, standards, and procedures for determining eligibility for assistance." (emphasis added)). If § 5174(j) leaves the decision whether to promulgate regulations within FEMA's discretion, it adds nothing to the statutory scheme in light of the agency's general discretion to make "such rules and regulations as may be necessary" granted by § 5164. Because we cannot presume that § 5174(j) is meaningless, we conclude that the section must impose some requirement on FEMA to promulgate, *inter alia*, housing eligibility regulations.

Having concluded that § 5174(j) is a requirement to prescribe certain rules rather than a grant of authority that FEMA may or may not exercise, we turn to the critical issue in this case: whether FEMA has complied with § 5174(j). In 2002, FEMA published an "interim final rule," which, according to FEMA,

5

contains the regulations called for by § 5174(j). *See* 44 C.F.R. §§ 206.110-206.120. The parties vigorously dispute the extent to which the regulations set forth ascertainable criteria, standards, and procedures for determining housing assistance eligibility.

*Chevron* provides the framework for our analysis of agency regulations. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). So long as an agency does not cross certain judicially patrolled boundaries, the agency's exercise of its delegated power should receive deference from the courts. The *Chevron* analysis proceeds in two steps. The first determines whether Congress intended to give the agency any discretion. Under *Chevron* step one, "a reviewing court must first ask whether Congress has directly spoken to the precise question at issue. If Congress has done so, the inquiry is at an end; the court must give effect to the unambiguously expressed intent of Congress." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (citations and quotations omitted). "But if Congress has not specifically addressed the question, a reviewing court must respect the agency's construction of the statute so long as it is permissible." *Id.* This leads to *Chevron* step two: the court defers to the agency's construction so long as agency regulations are not "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.

Plaintiffs primarily argue that FEMA's action fails *Chevron* step one because Congress has specifically directed FEMA to "prescribe rules and regulations to carry out this section [5174], including criteria, standards, and procedures for determining eligibility for assistance" and FEMA has failed to comply with this directive. FEMA responds that it complied with the Congressional directive by publishing the C.F.R. materials and directs the majority of its argument to the discretion provided by *Chevron* step two.

The § 5174 regulations that FEMA properly promulgated through the notice and comment rulemaking process do establish—though sometimes

imprecisely—criteria, standards, and procedures for determining eligibility for FEMA aid. Section 206.110 of the regulations sets certain limitations on the Stafford Act assistance program for individuals and households, including the maximum amount of assistance available, the date of eligibility for relief, and the length of time assistance is available. Section 206.111 defines a number of terms used in the home repair regulations, including "owner-occupied," "occupant," "primary residence," "safe," and "sanitary." Section 206.112 establishes the initial registration period for disaster relief and the procedures for extending the registration period and for the acceptance of late registrations. Section 206.113 lists a number of "eligibility factors," including specific eligibility limits based on insurance coverage. Section 206.114 sets out a documentation requirement for individuals who request ongoing repair assistance. Section 206.115 creates an appeals process for applicants FEMA finds ineligible.

Section 206.117, the main regulation at issue here, deals with housing assistance. It is divided into subsections covering the three main types of housing assistance FEMA offers: temporary housing assistance (either rental money or temporary housing structures), home repair—the subsection Plaintiffs complain is inadequate—and home replacement. The "repair" subsection states that FEMA "may provide financial assistance for the repairs of uninsured disaster-related damages to an owner's primary residence," and that any funds provided are to be used to "help return owner-occupied primary residences to a safe and sanitary living or functioning condition." 44 C.F.R. § 206.117(b)(2)(i). It also notes that repairs "may include utilities and residential infrastructure . . . damaged by a major disaster." *Id.* Additional repair regulations allow eligible individuals or households to receive the first $5,000 in assistance with a simple showing that they are uninsured, *id.* § 206.117(b)(2)(iv), but require the individual or household to obtain the permits and inspections required by state law before making repairs, *id.* 206.117(b)(2)(v). A separate section on "eligible

costs" states that "repairs . . . must be disaster-related and must be of average quality, size, and capacity, taking into consideration the needs of the occupant. Repairs to the primary residence are limited to restoration of the dwelling to a safe and sanitary living or functioning condition." *Id.* § 206.117(c)(1). Finally, the regulations list the kinds of repairs for which compensation is available.[1]

These regulations add significant content to the "repairs" subsection of the statute, which provides as follows:

> The president may provide financial assistance for—
> (i) the repair of owner-occupied private residences, utilities, and residential infrastructure (such as a private access route) damaged by a major disaster to a safe and sanitary living or functioning condition; and
> (ii) eligible hazard mitigation measures that reduce the likelihood of future damage to such residences, utilities, or infrastructure.

42 U.S.C. § 5174(c)(2)(A). Admittedly, as Plaintiffs point out, the regulations do not elaborate with specificity the statutory phrase "damaged by a major disaster"; section 206.117(b)(2)(i) uses the term "disaster-related damages." Nor do they set out a specific procedure by which FEMA investigators will decide the question at the heart of Plaintiffs' complaint, namely, which damages are

---

[1] *See* 44 C.F.R. §§ 206.117(c)(1)(i)–(viii):
(i) Repair or replacement of the structural components, including foundation, exterior walls, and roof;
(ii) Repair or replacement of the structure's windows and doors;
(iii) Repair or replacement of the structure's Heating, Ventilation and Air Conditioning System;
(iv) Repair or replacement of the structure's utilities, including electrical, plumbing, gas, water and sewage systems;
(v) Repair or replacement of the structure's interior, including floors, walls, ceilings, doors and cabinetry;
(vi) Repair to the structure's access and egress, including privately owned access road and privately owned bridge;
(vii) Blocking, leveling, and anchoring of a mobile home, and reconnecting or resetting mobile home sewer, water, electrical and fuel lines and tanks; and
(viii) Items or services determined to be eligible hazard mitigation measures.

sufficiently "related" to the declared major disaster to make an individual or household eligible for relief. But, as FEMA points out, this is a complaint that the regulations lack specificity, not that FEMA wholly abdicated its responsibility to promulgate regulations, or promulgated regulations that directly contravene the statutory language.

The cases Plaintiffs rely on to press their *Chevron* step one argument do not convince us that FEMA has failed to follow the congressional directive established by § 5174(j). The first set of cases Plaintiffs use for support—mainly *Ethyl Corp. v. EPA* and *MST Express v. Department of Transportation*—identify agency failures to establish rules through proper procedures, rather than failures to comply with statutory directives to elaborate regulations with a certain level of specificity. *Ethyl Corp.*, 306 F.3d 1144 (D.C. Cir. 2002) (noting importance of "by regulation" language in statute); *MST Express*, 108 F.3d 401 (D.C. Cir. 1997) (invalidating the Federal Highway Administration's safety fitness rating method because it relied on guidelines that were not the result of notice and comment rulemaking).

Plaintiffs cite a second group of cases for the proposition that regulations that merely "parrot" the statutes they seek to implement are invalid. Although these cases contain language supporting Plaintiffs' position, we do not find them entirely applicable to this appeal. These cases stand not for the proposition that "parroting" regulations are necessarily invalid, but rather for the proposition that an agency is not entitled to additional deference when its "interpretation" of the statute simply repeats the statute's language. *See Gonzales v. Oregon*, 546 U.S. 243, 257 (2006) ("An agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language."). Plaintiffs' reliance on the "parroting" cases would be more apposite if FEMA were claiming that additional deference was due simply because FEMA issued

regulations repeating the statutory language. The cases do not, however, suggest that "parroting" regulations are per se invalid nor that parroting alone necessarily invalidates the regulations.

In short, although the C.F.R. materials do not lay out the "criteria, standards, and procedures for determining eligibility for assistance" with as much specificity as might be desired, we cannot conclude that the regulations contravene Congress's directive to issue eligibility regulations. The additional content provided by §§ 206.110–206.120 significantly narrows the universe of potentially eligible disaster victims. Accordingly, we conclude that FEMA has complied with the congressional directive by publishing these regulations and, thus, that the regulations are unobjectionable under *Chevron* step one.

The second step in determining whether FEMA's regulations constitute a permissible interpretation of § 5174 requires us to consider whether the regulations are "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. If not, they are entitled to judicial deference.

Plaintiffs argue that the regulations lack specificity and lead the agency to make arbitrary disaster assistance decisions. Their contention is, at its core, that the regulations are so vague that the court should consider them arbitrary or capricious.

Plaintiffs contend that the regulations are invalid under *Morton v. Ruiz*, a pre-*Chevron* case, because they are too vague to prevent FEMA from making inherently arbitrary ad hoc determinations. 415 U.S. 199 (1974). In *Morton*, the Court's statement that "the determination of eligibility cannot be made on an ad hoc basis by the dispenser of the funds" was premised on the fact that the agency had "chosen not to publish its eligibility requirements . . . in the Federal Register or in the CFR." 415 U.S. at 232, 234. Unlike the agency in *Morton*, which did

not promulgate the rule in question, FEMA has published its regulations in the Federal Register and the C.F.R.  Thus, *Morton* does not control this case.[2]

Second, Plaintiffs claim that *Shays v. FEC* and *Northeast Maryland Waste Disposal Authority v. EPA*, both from the D.C. Circuit, show that agencies must support their regulations with explicitly stated reasoning and evidence to survive *Chevron* step two.  *Shays*, 528 F.3d 914 (D.C. Cir. 2008); *Ne. Md. Waste Disposal Auth.*, 358 F.3d 936 (D.C. Cir. 2004).  In *Shays*, the FEC was under a statutory directive to provide a "detailed explanation and justification" for its campaign finance regulations.  *See* 2 U.S.C. § 438(d)(1).  Further, since the FEC was changing its prior policy, it was under a general obligation that "an agency choosing to alter its regulatory course must supply a reasoned analysis indicating that its prior policies and standards are being deliberately changed, not casually ignored."  *Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 687 (5th Cir. 2000) (quotation omitted).  *Shays* is inapplicable because the regulations at issue here have not been amended in a way that would require a "reasoned analysis," and there is no equivalent statutory requirement that FEMA issue an "explanation and justification" for its regulations.  In *Northeast Maryland Waste Disposal Authority*, the statute at issue specifically required a "'statement of . . . basis and purpose' that includes a summary of 'the major legal interpretations and policy considerations underlying' the rule."  358 F.3d at 948–49 (citing 42 U.S.C. § 7607(d)(3), (d)(6)(A)).  *Northeast Maryland Waste Disposal Authority* is inapplicable because § 5174 does not require FEMA to prepare a similar statement to accompany its regulations.

In contrast with the cases Plaintiffs rely on, the D.C. Circuit's decision in *American Trucking Associations v. Department of Transportation* better fits the facts presently before the court.  166 F.3d 374 (D.C. Cir. 1999).  In *American*

---

[2] If on remand Plaintiffs are able to establish that FEMA makes eligibility determinations using non-published criteria, then *Morton* would become more relevant.

*Trucking*, industry groups challenged regulations establishing a safety fitness rating as insufficiently specific. *Id.* at 378. The enabling legislation required the agency to "maintain by regulation a procedure for determining the safety fitness" of motor carriers, which had to include "specific initial and continuing" safety requirements. *Id.* The court noted that "[t]he *Chevron* test applies to issues of how specifically an agency must frame its regulations," and held that since the statute's language did not identify the degree of specificity required in the regulations, the relevant question was whether the regulations reasonably provided a methodology for determining the safety level of carriers. *Id.* at 378–79. The court approved the regulations, explaining that its caselaw "explicitly accorded agencies very broad deference in selecting the level of generality at which they will articulate rules." *Id.* at 379; *see also Metro. Wash. Airports Auth. Prof'l Fire Fighters Ass'n v. United States*, 959 F.2d 297, 300 (D.C. Cir. 1992) (upholding a lease that did not address employee rights in greater detail than the enabling legislation because "judicial deference is at its highest in reviewing an agency's choice among competing policy considerations, including the choice here of the level of generality at which it will promulgate norms implementing a legislative mandate" (citation omitted)).

Plaintiffs attempt to distinguish *American Trucking* on the ground that the new regulations were highly specific and gave much more guidance to the regulated parties than FEMA's regulations gave to Plaintiffs. Although Plaintiffs are correct on the facts, the statute at issue in *American Trucking* explicitly called for "*specific* initial and continuing" safety requirements. *Id.* at 378 (emphasis added). Section 5174 does not set out a given level of specificity that FEMA's regulations must meet. *American Trucking* thus supports FEMA's position that, where Congress does not require a certain level of specificity, the agency has discretion to decide how specific its regulations will be.

12

No. 09-40948

Ultimately, Plaintiffs' "specificity" argument is a difficult one to make. A regulation could always be more specific, and so it will always contain some vagueness that vests on-the-ground personnel with a level of discretion. FEMA's regulations for housing repair assistance are especially vague about the meaning of "disaster-related." Indeed, they do not venture beyond the statutory language. But this vagueness does not automatically mean the regulations are invalid. Given the nature of FEMA's work and the compressed time it has to make individual determinations, the agency requires relatively wide discretion for the ground-level workers who make initial assistance decisions.[3]

In conclusion, we hold that the district court abused its discretion in issuing the preliminary injunction. The award of preliminary injunctive relief is an extraordinary remedy that should only issue if the movant shows a *substantial* likelihood of prevailing on the merits. *Ridgely*, 512 F.3d at 734. Here, Plaintiffs cannot show a substantial likelihood of prevailing on the merits because the law on the question at the heart of the dispute does not favor their position. Thus, even if Plaintiffs have some chance of prevailing after an adjudication on the merits, the preliminary injunction was issued in error.

B

Because we have determined that Plaintiffs cannot show a substantial likelihood of success on the merits, we need not address FEMA's additional arguments regarding the other necessary elements for preliminary injunctive relief. The holding on the initial element is sufficient to vacate the injunction.

---

[3] This, of course, does not mean that the regulations cannot be improved. Even FEMA seems to implicitly recognize that they are rather poor, and this court explicitly criticized them in *Ridgely*. One hopes that the new regulations FEMA is considering will give affected parties more guidance about whether the damage to their homes will count as "disaster-related."

No. 09-40948

C

Plaintiffs have also asked this court to exercise its discretion to address an alternate ground for deciding in their favor that the district court has yet to rule on. Plaintiffs contend that FEMA has admitted that it used an unpublished "deferred maintenance" rule to decide which homes were damaged by the hurricane. This, they argue, runs afoul of 5 U.S.C. § 552(a)(1).

We decline to address Plaintiffs' § 552(a)(1) argument. Our review of the record does not indicate that it has been definitively established that FEMA denies assistance wholly on the basis of an unpublished "deferred maintenance" rule. We note, however, that our decision not to address Plaintiffs' § 552(a)(1) argument in no way reflects our view of the argument's merit. We express no opinion on the merits at this time, deciding instead to avoid improper appellate fact finding and to leave the initial decision to the district court.

IV

For the foregoing reasons, we VACATE the preliminary injunction and REMAND the case to the district court for further proceedings.