# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 19, 2018         Decided March 1, 2019

No. 17-5206

DANIEL BARBOSA, ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY AND
FEDERAL EMERGENCY MANAGEMENT AGENCY,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-01843)

*Amanda Flug Davidoff* argued the cause for appellants.
With her on the briefs were *Adam R. Brebner*, *Jerome Wesevich*,
and *Edward Tuddenham.*

*Julie A. Murray* and *Scott L. Nelson* were on the brief for
*amicus curiae* Public Citizen, Inc. in support of plaintiffs-
appellants.

*Michael L. Foreman* was on the brief for *amici curiae*
National Low Income Housing Coalition, et al. in support of
plaintiffs-appellants.

*Mark B. Stern*, Attorney, U.S. Department of Justice, argued

the cause for appellees. With him on the brief were *Alisa B. Klein* and *Carleen M. Zubrzycki*, Attorneys.

Before: KATSAS, *Circuit Judge*, and SILBERMAN and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: A number of applicants sought Stafford Act economic relief from FEMA because of storm damage. They, accompanied by La Union del Pueblo Entero, appeal the district court's dismissal. We, however, agree with the district court. We lack jurisdiction over their claims because of a statutory preclusion of judicial review.

## I.

The Stafford Act authorizes the President to provide relief in response to "major disasters." The President has delegated authority under the Stafford Act to the Federal Emergency Management Agency ("FEMA"), a subdivision of the Department of Homeland Security. In 2000, Congress established the Federal Assistance to Individuals and Households Program. Unlike the traditional approach of Stafford Act programs, which disburse federal funds to the states, which in turn disburse those funds to individuals, under this program, the federal government may provide forms of direct relief to individuals and households after a major disaster has been declared by the President.[1]

---

[1] *See* 42 U.S.C. §§ 5121 *et seq.*

The statute creating the program contains three specific statutory provisions designed to guide its implementation. They call for the issuance of regulations as follows:

(1) "The President shall issue, and may alter and amend, such regulations as may be necessary for the guidance of personnel *carrying out* Federal assistance functions at the site of a major disaster or emergency. Such regulations shall include provisions for insuring that the distribution of supplies, the processing of applications, and other relief and assistance activities shall be accomplished in an *equitable* and *impartial* manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, disability, English proficiency, or economic status." 42 U.S.C. § 5151(a) (emphasis added);

(2) "The President shall prescribe rules and regulations to carry out this section, *including criteria*, *standards*, and *procedures for determining eligibility* for assistance." 42 U.S.C. § 5174(j) (emphasis added);

(3) "The President shall issue rules which provide for the *fair* and *impartial consideration* of *appeals* under this section." 42 U.S.C. § 5189a(c) (emphasis added).

But there is a fourth statutory provision of the Stafford Act applying to this case, a preclusion of judicial review, which governs our jurisdiction:

"The Federal Government shall not be liable for any claim upon the exercise or performance of or the *failure to exercise or perform a discretionary function* or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter." 42 U.S.C. § 5148 (emphasis added).

4

\* \* \*

The government has promulgated regulations pursuant to the statutory mandates.[2]

Starting with 42 U.S.C. § 5151(a), the nondiscrimination mandate, FEMA issued a regulation that provides for nondiscrimination in disaster assistance.[3] Although, in part, it echoes the statutory language, it does more. It also states "government bodies and other organizations [participating in Stafford Act programs] shall provide a written assurance of their intent to comply with regulations relating to nondiscrimination," and provides that the agency "shall make available" to "interested parties . . . information regarding" its nondiscrimination regulation. Perhaps most significant, as the district court noted, the regulation states "Federal financial assistance to the States or their political subdivisions is conditioned on full compliance with" regulations entitled "Nondiscrimination in Federally-Assisted Programs."[4] That provision states explicitly: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program to which this regulation applies." *Inter alia*, the nondiscrimination regulations identify specific discriminatory actions prohibited, require that

---

[2] We note that the regulations at times track the statutory language. Presumably, the statutory command to regulate anticipates more than merely restating the statutory language. However, incorporating the statutory language into a broader regulatory framework is understandable, especially when the statute arguably sets out only the minimum standards of regulation.

[3] 44 C.F.R. § 206.11.

[4] 44 C.F.R. §§ 7.1 *et seq*.

assurances of nondiscrimination accompany applications, and contain extensive provisions regarding conducting compliance investigations.

FEMA has also promulgated regulations, purportedly, "to carry out" the program, "including criteria, standards, and procedures for determining eligibility for assistance," as mandated by 42 U.S.C. § 5174(j).[5] The regulations include provisions calling for the payment of "necessary expenses" or "serious needs" for those "unable to meet such expenses" caused by disasters "through other means." This provision states the maximum amount of assistance ($25,000, adjusted "annually to reflect changes in the Consumer Price Index"), the multiple types of assistance, the date of eligibility, the duration of assistance (not longer than 18 months unless exceptional circumstances exist), and details about how assistance will be characterized and treated (not counted as income, exemption from garnishment, and duplication of benefits). A regulation also defines certain terms used in the regulations, including "[h]ousing costs," "[s]afe," and "[u]ninhabitable." The regulations state the registration period (60 days after declaration of major disaster or emergency) and provide for extensions and late registrations.

Another provision, of obvious significance, describes when funds for repairs will be granted ("[if:] [t]he component [of a structure] was functional immediately before the declared event; [t]he component [of a structure] was damaged, and the damage was caused by the disaster; [t]he damage to the component [of a structure] is not covered by insurance; and [r]epair of the component [of a structure] is necessary to ensure the safety or health of the occupant or to make the residence functional"). It further lists the components that are eligible for repair through

_____

[5] 44 C.F.R. §§ 206.110 *et seq*.

housing assistance (including "[s]tructural components of the residence," "[w]indows and doors," and "[t]he Heating, Ventilation and Air Conditioning system").

Even more detail is provided by a provision that establishes nine "[c]onditions of eligibility" and ten "[c]onditions of ineligibility." "FEMA may only provide assistance" when the eligibility conditions have been met. Assistance may be provided "[w]hen the individual or household has incurred a disaster-related necessary expense or serious need in the state in which the disaster has been declared, without regard to their residency in that state." These conditions also provide for assistance even in some situations where individuals have insurance. Other conditions also describe the necessary state of the renter's or owner's residence in order to qualify for housing assistance: "primary residence has been destroyed, is uninhabitable, or is inaccessible." The ten conditions of ineligibility speak to circumstances in which the individuals or households still have access to their homes or to accommodations, have adequate insurance, or meet other criteria.

Of particular concern to Appellants, FEMA's provisions governing appeals as mandated by 42 U.S.C. § 5189a(c) list the determinations applicants may appeal, state that "[a]ppeals must be in writing and explain the reason(s) for the appeal," provide for requesting files related to the applicant, and describe the period of appeal and to whom appeals must be directed. These provisions explain that an appellant will receive "a written notice of the disposition of the appeal within 90 days of the receiving of the appeal," and that "the decision of the appellate authority is final." The regulations also state that an appeal of a determination regarding repair assistance "must provide proof . . . that the component was functional before the declared event and proof that the declared event caused the component to stop

functioning" and, if disputing the amount of assistance granted, "must also provide justification for the amount sought."

* * *

Appellants are twenty-six individuals who resided in Texas and whose homes suffered damage during one of three storms in 2015 and 2016 declared major disasters, accompanied by La Union del Pueblo Entero, a non-profit organization. The individual Appellants all sought relief through the program. After having applied, some of them received a letter granting benefits, others a form letter denying benefits. All appealed. Some were granted an increase in benefits, others were denied any additional relief.

Appellants' suit was dismissed by the district judge on jurisdictional grounds, although the judge alternatively concluded the regulations satisfied the statute.

## II.

It should be noted at the outset that Appellants make no claim that they are entitled statutorily to any specific amount of payments in response to their Stafford Act claims. Nor is it asserted that constitutional due process is governing because it is not claimed that Appellants have a property interest. Their primary contention is rather that FEMA inadequately complied with its statutory obligation to publish regulations that would, *inter alia*, describe the criteria the agency has used to determine whether and for how much their claims were paid. Without such criteria, according to Appellants, it is difficult to present a claim or for that matter appeal from a denial. Indeed, Appellants argue that the actual process by which claims are evaluated—we are told by contractors—is governed by "secret law."

The government insists the regulations satisfy the statutory mandates, denies that there is any "secret law" governing claims, and, in any event, contends that the preclusion of judicial review ousts us of jurisdiction to entertain Appellants' claims.[6] (Interestingly, the government does not rely on *Chevron* deference.)

Although we would normally turn our attention first to our jurisdiction, as the district court noted, *Barbosa v. U.S. Dep't of Homeland Sec.* (*Barbosa I*), 263 F. Supp. 3d 207, 215-16 (D.D.C. 2017), to decide whether the preclusion of judicial review applies, it is necessary to determine whether the agency's actions are discretionary—which obliges us to compare those actions with the statute. Indeed, the Fifth Circuit faced with a similar case, *La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency* (*LUPE*), 608 F.3d 217 (5th Cir. 2010), held that FEMA's regulations satisfied one of the statutory provisions, 42 U.S.C. § 5174(j), without even considering the judicial review preclusion. The court concluded that the regulations "significantly narrow[] the universe of potentially eligible disaster victims." *LUPE*, 608 F.3d at 223.

Appellants direct their argument that the regulations are inadequate primarily to FEMA's alleged failure to sufficiently

---

[6] The preclusion language could be thought to sound more like a limitation on a cause of action, but because it implicates sovereign immunity, the district court and we see it as jurisdictional. *See Dalehite v. United States*, 346 U.S. 15, 24, 31-32 (1953); *see also Morris v. Washington Metro. Area Transit Auth.*, 781 F.2d 218, 221 (D.C. Cir. 1986). To be sure, the Supreme Court has recently tightened the concept of jurisdiction, *see, e.g.*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160-63 (2010), but even if the preclusion provision were regarded as a limitation on a cause of action, our analysis would be the same.

specify the criteria for eligibility and for amounts of reimbursement. They rely on two of our cases, *American Airlines, Inc. v. Transportation Security Administration*, 665 F.3d 170 (D.C. Cir. 2011) and *Oceana, Inc. v. Locke*, 670 F.3d 1238 (D.C. Cir. 2011). We think those cases are instructive but not persuasive precedent because the statutory mandates were more specific. In *American Airlines*, Congress had directed *in hoc verba* that the Transportation Security Administration develop a priority list for reimbursement of airport security projects. The TSA, however, added an escape clause allowing it to deviate on "a case-by-case" basis that essentially modified—almost nullified—the congressional command. *Am. Airlines*, 665 F.3d at 177. And similarly in *Oceana,* the Department of Commerce frustrated a statutory command that it adopt a standardized reporting methodology by adding "an exception so vague as to make the rule meaningless." *Oceana*, 670 F.3d at 1241.

As for Appellants' argument in this case, that FEMA's regulations lack adequate criteria, we agree with the Fifth Circuit that the extensive list of eligible and ineligible claims certainly narrows the type of claims that the agency will grant. We admit that we are more troubled by the regulations' treatment of appeals—which, it will be recalled, are required to be "fair." It is certainly difficult to muster an effective appeal if one is ignorant of the grounds upon which a claim is denied.[7] Indeed, we have said if a constitutionally protected property interest is involved—which is not this case—a statement of reasons explaining a denial may well be required if an appeal

---

[7] Moreover, since the appeals regulations impose no time limit on FEMA to turn over information in an individual's "file" following a request, *see* 44 C.F.R. § 206.115(d), there is no guarantee that this information (whose contents are nowhere specified) will be received within the 60-day window to lodge an appeal, *id*. § 206.115(a).

right is effective. *Lightfoot v. District of Columbia*, 448 F.3d 392, 398 (D.C. Cir. 2006) (per curiam).

It is unnecessary, however, for us to decide whether the appeals regulations are "fair" because we conclude the preclusion of review limits our authority to challenge FEMA's regulations. The parties do not dispute that the appropriate test, as the district court recognized, is the test the Supreme Court used to interpret similar language in the Federal Tort Claims Act. *See Barbosa I*, 263 F. Supp. 3d at 216. If the challenged agency act involves "an element of judgment or choice" and the agency's "judgment is of the kind that the discretionary function was designed to shield," our review is precluded. *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (citations omitted). We have little doubt that the statutory requirements for regulations rely on the discretionary judgment of FEMA; the range of choice that FEMA can employ is quite wide.

The Supreme Court has concluded the discretionary function exception to judicial review is inapplicable under the first prong of the test only if "a federal statute . . . specifically prescribes a course of action" to be followed, *Berkovitz v. United States*, 486 U.S. 531, 536 (1988), and that is not this case. We need not decide whether if FEMA failed to issue regulations at all would the preclusion of review still apply; the agency has issued a great deal in the form of regulations supplemented by interpretive guidance—some were issued after the Fifth Circuit case, *LUPE*.[8]

---

[8] We have held a failure to promulgate regulations at all in light of a statutory mandate to be illegal. *See, e.g.*, *Ethyl Corp. v. EPA*, 306 F.3d 1144, 1146 (D.C. Cir. 2002) (citations omitted) (EPA ignored statutory mandate to "by regulation establish methods and procedures" by creating "a framework for automobile manufacturers to develop their own tests."). But Appellants are misguided in relying on those

**III.**

Appellants, perhaps recognizing that their direct attack on the regulations would run into a jurisdictional barrier, presented a creative alternative argument. They turn away from the Stafford Act to the Freedom of Information Act ("FOIA") to expose the "secret law" that they suspect is used to deny claims and appeals. They rely on 5 U.S.C. § 552(a)(1), which obliges agencies to publish, *inter alia*, "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D).

We have held, however, that that section cannot be enforced by a judicial mandate to publish materials in the Federal Register, *see Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1202-03 (D.C. Cir. 1996); it is only if a person dealing with an agency is "adversely affected" by a matter that should have been published can he or she get relief. 5 U.S.C. § 552(a)(1). Appellants claim that the "secret law" employed by FEMA with regard to claims and appeals adversely affects them so therefore they are entitled to have their Stafford Act cases reopened.

It is probable that the sanction in that section is designed for a case like *Satellite Broadcasting Co., Inc. v. FCC*, 824 F.2d 1 (D.C. Cir. 1987), where an application for a license was improperly rejected because it was filed at the wrong location, despite the fact that the FCC had never published the right location. But even assuming one could stretch "adverse affect" to refer to denied Stafford Act claims, we think § 552(a)(1) cannot be used to allow us to review Stafford Act regulations,

cases here.

still less to reopen FEMA decisions. The preclusion of judicial review remains a barrier.

To be sure, modifications of the APA's applicability, as Appellants point out, must be specifically stated, 5 U.S.C. § 559, but the preclusion of judicial review is a jurisdictional limitation on judicial power. A FOIA claim cannot be used to create judicial authority to review Stafford Act claims, regardless of whether § 552(a)(1), itself, is discretionary.[9]

After all, Congress specifically limited our jurisdiction to review discretionary decisions under the Stafford Act. As such, it would be an improbable stretch to use another unrelated statute to frustrate congressional intent.

That is not to say that we were unmoved by the contentions that "secret law" was being used. So we were encouraged to hear government counsel assure us that additional policies for dealing with claims and appeals were easily available to Appellants on the internet. Moreover, a normal FOIA request would reach any governing policies. At oral argument, counsel for FEMA stated repeatedly that the agency would have no objection to complying with *specific* requests for documents so that the allegedly "secret law" can be brought to light. So, to the extent Appellants wish to seek additional materials beyond those already now available to them, they may do so by making FOIA requests under 5 U.S.C. § 552(a)(3). And, of course, if such requests are denied, they may seek further judicial review

---

[9] The district court, assuming § 552(a)(1) applied to Stafford Act challenges, reasoned that the preclusion of judicial review would still govern because it would be discretionary as to what was published. *Barbosa v. U.S. Dep't of Homeland Sec.* (*Barbosa II*), 278 F. Supp. 3d 325, 328 (D.D.C. 2017).

through FOIA under 5 U.S.C. § 552(a)(4)(B), a provision that they did not invoke in this case.

We do not mean to suggest that the Stafford Act cases can be reopened regardless of the result of any subsequent FOIA litigation; the preclusion of judicial review still governs. But if it should turn out that there is something troubling in the files, there is always the possibility of further legislation.

## IV.

For the foregoing reasons, we affirm the district court's dismissal.

*So ordered.*