**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 27, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

MIDWEST CRANE AND RIGGING, INC.,

    Petitioner,

v.

FEDERAL MOTOR CARRIER SAFETY
ADMINISTRATION,

    Respondent.

No. 09-9520

**Petition for Review of an Order from the**
**Federal Motor Carrier Safety Administration**
**(FMCA-2007-29184)**

Kurt S. Brack of Holbrook & Osborn, P.A., Overland Park, Kansas, for Petitioner.

Sushma Soni, Attorney, Department of Justice, Washington, D.C. (Tony West,
Assistant Attorney General, and Thomas M. Bondy, Attorney, Department of
Justice, Washington, D.C.; Robert S. Rivkin, General Counsel, Paul M. Geier,
Assistant General Counsel for Litigation, and Paul Samuel Smith, Senior Trial
Attorney, Department of Transportation, Washington, D.C.; and David K. Tochen,
Acting Chief Counsel, Federal Motor Carrier Safety Administration, Washington,
D.C., with her on the brief), for Respondent.

Before **KELLY**, **SEYMOUR** and **LUCERO**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Midwest Crane and Rigging, Inc. ("Midwest") petitions for review of the Federal Motor Carrier Safety Administration ("FMCSA") determination that it is a "commercial motor carrier" subject to the agency's jurisdiction. We deny the Petition for Review.

**I.**

The Interstate Commerce Commission ("ICC") was initially the regulating body for motor carriers. *See* Motor Carrier Act, Pub. L. No. 74-255, 49 Stat. 543 (1935). In 1966, Congress transferred this regulatory authority to the Department of Transportation ("DOT"), *see* Department of Transportation Act, 89 Pub. L. No. 670, 80 Stat. 931, 939-40 (1966), which delegated it to the Federal Highway Administration. *See* 49 C.F.R. § 1.4(c)(7) (1968); *Darrell Andrews Trucking, Inc. v. Federal Motor Carrier Safety Admin.*, 296 F.3d 1120, 1123 n.1 (D.C. Cir. 2002).

In 1984, in order to ensure public safety on the nation's highways, Congress enacted the Motor Carrier Safety Act ("MCSA"). 49 U.S.C. § 31501 *et seq*. The MCSA, *inter alia*, enables the Secretary of Transportation to "prescribe requirements for . . . safety . . . and standards of equipment of, a motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 31502(b); *see also* 49 U.S.C. § 31136(a)(1) (directing DOT to promulgate regulations to "ensure that . . . commercial motor vehicles are maintained, equipped, loaded, and operated safely."). Pursuant to this authority, the DOT promulgated regulations

-2-

that require commercial vehicles to be inspected at least once annually. *See* 49

C.F.R. § 396.17, *revised by* 73 Fed. Reg. 76794 (Dec. 17, 2008).

In 1991, Congress enacted the Omnibus Transportation Employee Testing

Act. 49 U.S.C. § 5331. "The Testing Act embodies a congressional finding that

'the greatest efforts must be expended to eliminate the . . . use of illegal drugs,

whether on or off duty, by those individuals who are involved in [certain

safety-sensitive positions, including] the operation of . . . trucks.' Pub.L. 102-143,

§ 2(3), 105 Stat. 953." *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57,

63-64 (2000) (ellipses and brackets in original).[1] Pursuant to the authority of this

Act, DOT issued regulations requiring pre-employment testing for alcohol and

controlled substances. *See* 49 C.F.R. § 391.81 *et seq.*; *id.* § 382.101 *et seq.*; *id.* §

392.1 *et seq.*; *see also* Department of Transportation Drug Testing Regulations for

the Motor Carrier Industry, Procedures for Transportation Workplace Drug

---

[1]

The Act adds that "increased testing" is the "most effective
deterrent" to "use of illegal drugs." [Pub L. 102-143] § 2(5). It
requires the Secretary of Transportation to promulgate regulations
requiring "testing of operators of commercial motor vehicles for the
use of a controlled substance." 49 U.S.C. § 31306(b)(1)(A) (1994
ed., Supp. III). It mandates suspension of those operators who have
driven a commercial motor vehicle while under the influence of
drugs. 49 U.S.C. § 31310(b)(1)(A) (requiring suspension of at least
one year for a first offense); § 31310(c)(2) (requiring suspension of
at least 10 years for a second offense). And DOT's implementing
regulations set forth sanctions applicable to those who test positive
for illegal drugs. 49 CFR § 382.605 (1999).

*E. Associated Coal Corp.,* 531 U.S. at 64.

Testing Programs, 53 Fed. Reg. § 47002, *et seq.* (Nov. 21, 1988).

In 1995, Congress abolished the ICC and transferred most of its responsibilities to the Secretary of Transportation at DOT. *See* ICC Termination Act of 1995, § 101, 109 Stat 803. With the Motor Carrier Safety Improvement Act of 1999, 113 Stat. 1748, Congress transferred responsibility for motor carrier safety within DOT to the newly created FMCSA. *See* 49 U.S.C. § 113(f); *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 759 n.1 (2004).

Among its statutory mandates, the FMCSA is responsible for prescribing federal standards for safety inspections of commercial motor vehicles, *see* 49 U.S.C § 31142, and assigning safety fitness ratings to owners and operators of commercial motor vehicles. 49 U.S.C. § 31144(b); 49 C.F.R. §§ 1.73(h), 385.9. Towards that end, the FMCSA inspectors perform periodic on-site compliance reviews, in which they assess points for regulatory violations and preventable accidents. *See* 49 C.F.R. §§ 385.5, 385.7.

## II.

The present petition for review stems from a dispute arising out of an FMCSA compliance review in response to a complaint. Petitioner Midwest, a Kansas corporation, leases construction cranes to contractors. At least sixteen of its cranes are self-propelled by the truck chassis on which it is permanently mounted. These self-propelled cranes travel in interstate commerce from the storage yard to job sites, where they are used to hoist materials.

Following the compliance review on April 19, 2007, the FMCSA issued a notice of claim charging Midwest with violations of four Federal Motor Carrier Safety Regulations ("FMCSR") involving Midwest's self-propelled cranes, including failure to comply with regulations governing vehicle safety inspections and drug and alcohol testing for drivers. The FMCSA proposed a $7,470 civil penalty for the violations.

Midwest denied any violation of the regulations based on its theory that it is not a "private motor carrier" pursuant to 49 U.S.C. § 31502(b) and therefore its self-propelled cranes are not subject to FMCSA jurisdiction. *See* FMCSA Order at 2. Under the FMCSR, 49 C.F.R. 390.5, a "private motor carrier" is a "person who provides transportation of property or passengers, by commercial motor vehicle, and is not a for-hire motor carrier." And as relevant here, a "commercial motor vehicle" is "a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle [] has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater[.]" 49 U.S.C. § 31132(1)(A). Midwest argued that its cranes "do not transport passengers or property" because each crane "is a unified device that includes a transporting mechanism, not two separate devices, and that the crane and its transporting mechanism operate as an integrated unit." FMCSA Order at 2.

The FMCSA rejected Midwest's assertion, reasoning that

in this matter, the prime purpose of the movement of the vehicles in interstate commerce is to transport the crane apparatus, which was permanently affixed to the vehicles, to and from job sites to perform a commercial service. Enhancing the safety with which this equipment may be transported should not remove [Midwest] from the jurisdiction of the Agency charged with regulating the safety of commercial motor vehicles. The units at issue in this proceeding have Gross Vehicle Weight Ratings of from 56,000 pounds to 129,000 pounds, far more than the minimum 26,001 pounds required to meet the definition of a commercial motor vehicle with regard to alcohol- and drug-testing requirements, and the minimum 10,001 pounds required to meet the definition of a commercial motor vehicle with regard to other FMCSR requirements. Clearly, self-propelled cranes should not be removed from the Agency's jurisdiction merely because the cranes are permanently affixed to the vehicles on which they reside. To allow these vehicles to remain outside the reach of the safety arm of this Agency would put the motoring public at great risk. Accordingly, self-propelled cranes are commercial motor vehicles and [Midwest] is a private motor carrier subject to FMCSA's jurisdiction.

FMCSA Order at 8-9. Because the FMCSA also determined that the question whether self-propelled cranes are subject to the FMCSR was unanswered at the time Midwest's alleged violations occurred, it did not impose any civil penalty on Midwest for violating agency regulations.

**III.**

Midwest petitions for review.[2] The outcome of this case turns on the meaning of the word "property" in 49 U.S.C. § 31132(1)(A) and the FMCSR. If, as Midwest argues, the crane apparatus is not "property" within the meaning of

---

[2] We have jurisdiction over this petition under 49 U.S.C. § 521(b)(9) and/or the Hobbs Act, 28 U.S.C. § 2342(3)(A). *See* Br. for Resp. at 2, 16; *see generally MST Express v. Dep't of Transp.*, 108 F.3d 401, 404-05 (D.C. Cir. 1997) (explaining applicability of judicial review provisions).

the statute and the regulations, its conduct may be beyond the purview of the FMCSA. Alternatively, if, despite Midwest's affixation of the crane apparatus to the vehicle, the crane apparatus still constitutes "property," then the disputed vehicles at issue here qualify as "commercial motor vehicles," and Midwest is a private motor carrier subject to the jurisdiction of the FMCSA.

Notably, although Congress routinely references the term "property" in regulating the motor carrier industry, it has never defined the term. In cases of Congressional silence such as this, the authorized agency – in this case the FMCSA – possesses broad discretion in administering the law. *See Valley Camp of Utah, Inc. v. Babbitt*, 24 F.3d 1263, 1267 (10th Cir. 1994) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)). We will defer to the agency's interpretation of an ambiguous statute "if it is reasonable in light of the text, the structure, and the underlying purpose." *Used Equipment Sales, Inc. v. Dep't of Transp.*, 54 F.3d 862, 865 (D.C. Cir. 1995). Moreover, we accord "substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (citations omitted). But this principle of deference is not absolute. We need not accept an agency's interpretation if it is "unreasonable, plainly erroneous, or inconsistent with the regulation's plain meaning." *Lewis v. Babbitt*, 998 F.2d 880, 882 (10th Cir. 1993) (citation and internal quotation marks omitted). Midwest has the burden to show that the FMCSA's action was "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A); 49 U.S.C. § 521(b)(9); *see also San Luis Obispo Mothers for Peace v. United States NRC*, 789 F.2d 26, 38 (D.C. Cir. 1986) (*en banc*) ("the party challenging an agency's action as arbitrary and capricious bears the burden of proof." (citation omitted)).

Turning to the FMCSA's interpretation of the meaning of "property," we note that it is consistent with the court's analysis in *Harshman v. Well Serv., lnc.*, 248 F. Supp. 953 (W. D. Pa. 1964), *aff'd per curiam*, 355 F.2d 206 (3d Cir. 1965) (affirming "for the reasons so well stated in the opinion of [the district court]."). The plaintiff in *Harshman* argued that its cement-pumping equipment, which was permanently mounted on a truck and transported in interstate commerce to job sites, was not "property" within the meaning of the statute. Midwest's argument here is essentially the same: its self-propelled cranes, which are permanently mounted on truck chassis that transport them in interstate commerce to job sites and were operated from the truck cab, are not "property." In rejecting a similar argument, the court in *Harshman* reasoned:

> It is fair to say that whenever those pump trucks moved in interstate commerce, as they often did, the prime purpose . . . of such movement was to transport the pumping equipment . . . to and from a job site. Plaintiffs contend that there was no such "property" transported by the trucks, since, by their view, the pumping equipment has to be viewed as "unitized" in the truck itself. This view I regard as highly unrealistic. The pumping equipment had nothing to do with the mechanical function of the trucks. Had it not been permanently affixed to the truck chassis, it is scarcely

-8-

imaginable that plaintiffs would contest its classification in the category of "property" for transportation. It was permanently affixed, however, thereby enhancing the comparative safety with which it could be transported on the public highways. It would be ironic in the extreme if I were to interpret this laudable safety measure as removing the defendant from the ambit of the Interstate Commerce Commission's power to regulate the safety of operations of carriers in interstate commerce. The pumping equipment . . . carried on the pump trucks did constitute "property," was owned by the defendant, and was transported in interstate commerce in furtherance of defendant's commercial enterprise.

*Harshman*, 248 F. Supp. at 958.

The FMCSA's determination that the analysis in *Harshman* is analogous to the situation here is not an unreasonable one. The record indicates that Midwest's self-propelled cranes are designed to operate, and do operate, in highway traffic to transport property in the performance of a commercial function. Their size and weight pose a significant risk to the safety of highway travelers. The FMCSA's exercise of jurisdiction over Midwest is consistent with the regulatory language, as well as with Congress's directive to make safety the agency's "highest priority." 49 U.S.C. § 113(b). Affording deference to the FMCSA's interpretation of Title 49 and of its own regulations, *see Valley Camp of Utah, Inc.,* 24 F.3d at 1267, we are not persuaded that the FMSCA's decision was arbitrary or capricious.[3] We therefore reject Midwest's argument that its crane

---

[3] We do not consider Midwest's and the FMCSA's alternative arguments, which were not advanced by the parties below nor addressed in the agency's final order. *See Hicks v. Gates Rubber Co.*, 928 F.2d 966, 970 (10th Cir. 1991) ("The general rule is that an appellate court will not consider an issue raised for the first

(continued...)

apparatuses do not constitute "property" within the meaning of the relevant statute and regulation, as well as its assertion that the FMCSA acted arbitrarily and capriciously in asserting jurisdiction over Midwest.

Accordingly, we **DENY** the Petition for Review.

---

[3](...continued)
time on appeal.").