FILED
United States Court of Appeals
Tenth Circuit

October 23, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

TRANSAM TRUCKING, INC.,

     Petitioner,

v.

No. 14-9503

FEDERAL MOTOR CARRIER SAFETY
ADMINISTRATION (FMCSA),

     Respondent.
_____

**Petition for Review of an Order from the
Federal Motor Carrier Safety Administration
(FMCS No. FMCSA-2012-0127)**
_____

Christopher M. McHugh, Seigfreid Bingham, Kansas City, Missouri; (Kendra D. Hanson, Seigfreid Bingham, Kansas City, Missouri, on the briefs), for Petitioner.

Robert D. Kamenshine, Attorney (Paul M. Geier, Assistant General Counsel for Litigation and Joy Park, Trial Attorney, Department of Transportation; T.F. Scott Darling, III, Chief Counsel and Valerie Beck, Attorney Advisor, FMCSA, of Counsel; Stuart F. Delery, Assistant Attorney General and Matthew Collette, Attorney, with him on the brief) U.S. Department of Justice, Washington, D.C., for Respondent.
_____

Before **HARTZ**, **GORSUCH**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

The Administrative Orders Review Act, better known as the Hobbs Act, 28 U.S.C. §§ 2341-2351, grants the courts of appeals exclusive jurisdiction to set aside or determine the validity of certain "rules, regulations, or final orders" of the Federal Motor Carrier Safety Administration. In this case, TransAm Trucking, Inc. petitions for review of an email it received from FMCSA's counsel expressing the agency's refusal to issue TransAm a third amended compliance review report pursuant to the parties' settlement agreement. We conclude that email was not a "final order" within the meaning of 28 U.S.C. § 2342(3)(A), and we dismiss TransAm's petition for lack of jurisdiction. Because we lack jurisdiction, we also dismiss TransAm's motion to transfer the petition to the district court under 28 U.S.C. § 2347(b)(3).

## BACKGROUND

Although the parties and this court are quite familiar with the procedural history of this case, we summarize it here to provide necessary context for resolving the jurisdictional question before us.

## I.    TransAm's 2012 Compliance Review and Administrative Proceedings

FMCSA is an administrative agency within the Department of Transportation. Through powers delegated to it by the Secretary of Transportation, the agency assigns safety fitness ratings to owners and operators of commercial motor vehicles. *See* 49 U.S.C. §§ 113(a), (f)(1); 49 U.S.C. § 31144; *see also* 49 C.F.R. § 1.87 (delegating authorities vested in Secretary of Transportation to Administrator of FMCSA); *Midwest Crane and Rigging, Inc. v. Fed. Motor Carrier Safety Admin.*, 603 F.3d 837, 838-39 (10th Cir. 2010) (summarizing history of motor carrier regulation). "Towards that end, []

2

FMCSA inspectors perform periodic on-site compliance reviews, in which they assess

points for regulatory violations and preventable accidents." *Id.* at 839.

The compliance review is defined as

> an on-site examination of motor carrier operations, such as drivers' hours of service, maintenance and inspection, driver qualification, commercial drivers license requirements, financial responsibility, accidents, hazardous materials, and other safety and transportation records to determine whether a motor carrier meets the safety fitness standard. A compliance review may be conducted in response to a request to change a safety rating, to investigate potential violations of safety regulations by motor carriers, or to investigate complaints or other evidence of safety violations. The compliance review may result in the initiation of an enforcement action.

49 C.F.R. § 385.3.

Following a compliance review, the agency considers factors enumerated in 49 C.F.R. § 385.7 and utilizes a prescribed methodology to assign the motor carrier one of three possible safety fitness ratings: satisfactory, conditional, or unsatisfactory. 49 C.F.R. §§ 385.3, 385.9(a). If a motor carrier believes FMCSA erred in assigning a proposed or final safety rating, the carrier can seek administrative review of the rating by submitting a written request to the chief safety officer. 49 C.F.R. §§ 385.11(e), 385.15. A motor carrier assigned a proposed or final rating of less than satisfactory may also take corrective actions and request a rating change at any time by submitting a written request to the appropriate FMCSA service center. 49 C.F.R. §§ 385.11(f), 385.17(a), (b). If FMCSA denies a motor carrier's request for a rating change, the carrier can seek administrative review of that denial under 49 C.F.R. § 385.15. 49 C.F.R. § 385.17(j). *See also* 49 C.F.R. § 385.423(a) (explaining administrative review of proposed safety ratings).

In February 2012, an FMCSA inspector performed an on-site compliance review at TransAm's Kansas headquarters. In a compliance review report dated February 22,

4

2012, the inspector cited TransAm for several violations, including a critical violation of 49 C.F.R. § 395.8(k)(1),[1] and assigned TransAm a proposed conditional rating.

TransAm challenged the proposed rating on two fronts. First, TransAm filed a request to change the proposed safety rating based on corrective actions taken by TransAm after FMCSA issued the citation. *See* 49 C.F.R. §§ 385.11(f), 385.17(a), (b). A few weeks later, while that request remained pending, TransAm filed a petition for administrative review of the proposed safety rating. *See* 49 C.F.R. §§ 385.11(e), 385.15.

FMCSA granted TransAm's request for a rating change on June 5, 2012, retroactively upgrading TransAm's rating to satisfactory effective April 4, 2012. *See In the Matter of TransAm Trucking, Inc. USDOT# 315503*, FMCSA-2012-0127, 2013 WL 2146669, at *1 (May 14, 2013) (discussing TransAm's administrative challenges to proposed safety rating). Nevertheless, through its petition for administrative review, TransAm maintained its challenge to the agency's citation of TransAm for a § 395.8(k)(1) violation. TransAm argued that despite the upgraded safety rating, FMCSA continued to report on a publicly accessible website that TransAm had been cited for a serious violation within the last 12 months. *Id.*

FMCSA's Assistant Administrator issued a written decision on May 14, 2013, dismissing TransAm's petition for administrative review as moot. The Administrator reasoned that even if the inspector erred in finding the violation, the only relief available

---

[1] 49 C.F.R. § 395.8(k)(1) requires motor carriers to "maintain records of duty status and all supporting documents for each driver it employs for a period of six months from the date of receipt."

to TransAm was an upgraded safety rating, and TransAm's rating had already been upgraded to satisfactory through its request for a rating change. The Administrator also characterized as moot TransAm's concern regarding FMCSA's continued reporting of the violation on an agency website because the relevant 12-month reporting period had elapsed. *Id.* at *1-2.

## II.    TransAm's Petitions for Judicial Review and the Settlement Agreement

TransAm filed a petition for judicial review, the second in a series of three, challenging the Administrator's dismissal of TransAm's petition for administrative review.[2] We later granted TransAm's motion to abate appellate proceedings while the parties discussed settlement. The parties eventually executed a settlement agreement on October 17, 2013, in which FMCSA agreed to remove TransAm's violation of 49 C.F.R. 395.8(k)(1) and the resulting proposed conditional safety rating from the February 22, 2012, compliance review by issuing an amended compliance review report that didn't include any reference to the violation or proposed conditional rating. In return, TransAm agreed to dismiss its second petition for judicial review.

FMCSA subsequently issued two amended compliance review reports. Neither report referred to the § 395.8(k)(1) violation, the original proposed conditional safety rating, or the upgraded satisfactory rating. Instead, both reports indicated, "Your proposed safety rating is: This Review is not Rated." Agency Record (AR), 21, 33.

---

[2] TransAm filed its first petition for judicial review of the proposed safety rating in April 2012. After the FMCSA granted TransAm's request for an upgraded safety rating in June 2012, the parties filed a joint stipulation of dismissal, and we dismissed TransAm's first petition for review. *See* Fed. R. App. P. 42(b).

According to the agency, these amendments satisfied its obligations under the settlement agreement and didn't alter TransAm's satisfactory rating even though neither report reflected that rating. But TransAm balked at dismissing its petition for judicial review, contending FMCSA breached the settlement agreement by refusing to issue an amended compliance review report expressly identifying TransAm's satisfactory rating.

In November 2013, TransAm's counsel and FMCSA's counsel exchanged several emails discussing TransAm's claim that FMCSA had breached the settlement agreement. Agency counsel's final email, dated November 20, 2013, expressed the agency's position that it had complied with the settlement agreement, that it wouldn't issue any further amended compliance review reports, and that the settlement agreement required TransAm to dismiss its second petition for judicial review.

Instead, TransAm filed a status report informing this court of the parties' settlement agreement dispute and seeking additional time "to file a motion to enforce settlement and accompanying brief." Case No. 13-9572, Pet'r Status Report, dated Dec. 2, 2013. We directed TransAm to file an opening brief on or before January 2, 2014, but questioned our jurisdiction to consider a motion to enforce "a collateral settlement agreement for which no record exists." Case No. 13-9572, Order, dated Dec. 2, 2013. We further instructed TransAm that if it filed a motion to enforce the settlement agreement, the motion must include an explanation of the jurisdictional basis and "why the proper procedure wouldn't be to initiate a separate action in a trial court to determine the enforceability of the proposed settlement agreement and then, if unsatisfied with the outcome of that proceeding, to initiate an appeal." *Id.* But TransAm declined to file such

7

a motion; instead, on December 30, 2013, the parties filed a joint stipulation of dismissal, and we dismissed TransAm's second petition for review. *See* Fed. R. App. P. 42(b).

Three weeks later, on January 17, 2014, TransAm filed the instant petition for review of "the final decision of [FMCSA] refusing to issue an amended Compliance Review pursuant to a fully-executed settlement agreement with TransAm Trucking."[3] Case No. 14-9503, Pet. for Rev., 1. Again, we questioned our jurisdiction, noting that it appeared from the docketing statement that TransAm sought "to enforce the terms of the settlement agreement . . . rather than [seeking] review of a final agency order." Case No. 14-9503, Order, dated Feb. 6, 2014, at 1. Based on this concern, we directed the parties to file responses addressing this potential jurisdictional defect. After receiving those responses, we continued to question jurisdiction but ordered the parties to proceed with merits briefing.

## DISCUSSION

As our recitation of the case history reveals, the parties have reached an impasse. FMCSA refuses to issue TransAm the only thing TransAm seeks—an amended compliance review report expressly confirming the agency's modification of TransAm's safety rating to satisfactory. And TransAm refuses to accept FMCSA's explanation for its

---

[3] On January 22, 2014, TransAm also filed an action against FMCSA in district court, asserting breach of contract and due process claims, seeking monetary damages under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and seeking a declaration that the settlement agreement required FMCSA to issue an amended compliance review with a satisfactory safety rating. TransAm later added a claim under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, seeking an order compelling the agency to issue an amended compliance review report. The district court has stayed that proceeding pending our resolution of the jurisdictional question in this appeal.

refusal—i.e., that the agency lacks authority to issue an amended report reflecting the modified rating and that even if it could issue such a report, that report wouldn't alter the status quo because TransAm has had a satisfactory safety rating since April 2012.

This impasse, regardless of its seemingly minor implications, has generated three separate petitions for review to this court and now presents us with the jurisdictional issue that's been bubbling just below the surface of this controversy since December 2013. That's when the parties jointly dismissed TransAm's second petition for review after this court pointed out the potential jurisdictional issue raised when TransAm expressed its intent to seek appellate enforcement of the parties' settlement agreement.

We review the legal question of jurisdiction de novo. *Huerta v. Gonzales*, 443 F.3d 753, 755 (10th Cir. 2006). TransAm, as the petitioner, bears the burden of establishing the basis of our jurisdiction. *See Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004).

I.    **The plain language of 28 U.S.C. § 2342(3)(A) limits our jurisdiction to "final orders" issued by FMCSA under specified statutes.**

TransAm argues the Hobbs Act, § 2342(3)(A), provides us with jurisdiction. That section gives circuit courts

> exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part) or to determine the validity of . . . all rules, regulations, or final orders of . . . the Secretary of Transportation issued pursuant to . . . part B or C of subtitle IV, subchapter III of chapter 311, chapter 313, or chapter 315 of title 49.

Because TransAm doesn't challenge a rule or regulation, our jurisdiction here hinges on whether FMCSA's email, which expressed the agency's refusal to issue an

9

amended compliance review report reflecting TransAm's upgraded safety rating, is a "final order" within the meaning of § 2342(3)(A).

TransAm initially suggests that the Hobbs Act doesn't define the term "final order," and urges us to derive its meaning from an Administrative Procedure Act (APA) provision, 5 U.S.C. § 551(6), defining "order" as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing."

Applying § 551(6) and other authorities, TransAm characterizes FMCSA's November 20, 2013, email as a "final disposition" that "marked the consummation of the agency's decision-making process" because it expressed the agency's refusal to issue a third amended compliance review report. Pet'r Br. 16. *See Farrell-Cooper Mining Co. v. U.S. Dep't of the Interior*, 728 F.3d 1229, 1235 (10th Cir. 2013) (analyzing administrative "finality" and explaining "[a]gency action is final when it marks the consummation of the agency's decisionmaking process and is one by which rights or obligations have been determined, or from which legal consequences will flow" (citations and internal quotation marks omitted)). Further, TransAm suggests, "the email had determinate consequences" because "there was no way TransAm was going to get what it bargained for in the Settlement Agreement absent legal action." Pet'r Br. 16. *See Int'l Tel. & Tel. Corp., Commc'ns Equip. and Sys. Div. v. Local 134, Int'l Bhd. of Elec. Workers, AFL-CIO*, 419 U.S. 428, 443 (1975) (explaining that "when Congress defined 'order' in terms of a 'final disposition,' it required that 'final disposition' to have some determinate consequences for the party to the proceeding").

10

As we will discuss, TransAm's latter point supports FMCSA's position that TransAm seeks enforcement of the settlement agreement rather than review of a "final order." But more fundamentally, the initial premise of TransAm's argument—i.e., that the Hobbs Act doesn't define "final order"—is flawed.

In fact, § 2342(3)(A) of the Hobbs Act defines and limits the term "final order" by specifically referring to "final orders of . . . the [FMCSA] issued pursuant to . . . part B or C of subtitle IV, *subchapter III of chapter 311,* chapter 313, or chapter 315 of title 49." (Emphasis added.) *See, e.g.*, *Dandino, Inc. v. U.S. Dep't of Transp.*, 729 F.3d 917, 919-20 (9th Cir. 2013) (interpreting phrase "final order issued under this section" in 49 U.S.C. § 521(b)(9) and concluding that "issued under this section" defines and limits meaning of "final order" to orders issued under § 521).

As relevant here, the Secretary of Transportation has delegated its duties under subchapter III of chapter 311, relating to the assessment of motor carrier safety and the assignment of safety ratings, to FMCSA. *See* 49 U.S.C. §§ 113(a), (f)(1); 49 U.S.C. § 31144; *see also* 49 C.F.R. § 1.87 (delegating authorities vested in Secretary of Transportation to Administrator of the FMCSA). And compliance review is the agency's primary tool for carrying out those duties. *See* 49 C.F.R. § 385.9(a) (explaining process of assigning safety ratings following compliance review).

In other words, the Hobbs Act limits the universe of "final orders" directly reviewable in the courts of appeals to FMCSA orders issued pursuant to FMCSA's duties to assess motor carriers' compliance with safety regulations and assign safety ratings.

11

And, as we discuss next, we are not persuaded by TransAm's argument that FMCSA's email fits within this limited universe of reviewable FMCSA orders.

## II.   FMCSA's email is not a "final order" within the meaning of 28 U.S.C. § 2342(3)(A).

TransAm argues agency counsel's November 20, 2013, email was a "final order" under the Hobbs Act because (1) the issuance of a compliance review report is central to FMCSA's regulatory duties; (2) any compliance review report FMCSA issues must contain a safety rating; (3) the parties' settlement agreement obligated FMCSA to issue an amended compliance review report; and (4) the agency's email conveyed the agency's final decision refusing to issue an amended compliance review report reflecting a satisfactory rating.

The November 20, 2013, email from FMCSA's counsel to TransAm's counsel provided in full,

> We believe that FMCSA has complied fully with the terms of the settlement agreement. As you are well aware, TransAm has had a Satisfactory rating since April 2012. You brought this petition to challenge the underlying 395.8(k)(1) violation, and we agreed to remove that violation by issuing a new Compliance Review. That's exactly what the agency has done.
> It now seems that, notwithstanding the removal of the violation and the longstanding Satisfactory rating, TransAm wants more than the removal of the violation (and the accompanying "Conditional" rating) from the previous Compliance Review. As I understand it, you insist that the new Compliance Review include a Satisfactory rating, based upon the theory that FMCSA is forbidden from issuing an "unrated" compliance review. I suppose we can continue this litigation, and file briefs on the meaning of "Compliance Review" as it is used in the settlement agreement. We added that language merely as a way of describing the process by which we would accomplish the primary focus of the litigation and the agreement--removal of the challenged violation. I don't think further litigation would be

productive, given TransAm's current Satisfactory rating and the removal of the challenged violation, but that's a decision for you to make.

I should note, however, that TransAm's view that FMCSA is somehow prohibited from issuing a non-ratable review is incorrect. In your e-mail of November 11, 2013, you referred to the Assistant Administrator's interim order in *In the Matter of Western Freight Carrier, Inc.*, FMCSA-2012-0179 (Sept. 7, 2012). Yet that order merely asked FMCSA to provide an explanation for converting a Compliance Review into a non-ratable review. The agency in fact provided such an explanation, and the *final* order in *Western Freight* recognized that FMCSA acted properly in replacing the previous Compliance Review with a non-ratable review. *See In the Matter of Freight Carrier, Inc.*, FMCSA-2012-0179 (Sept. 28, 2012). I have attached that decision for your convenience.

In sum, we believe the settlement agreement requires TransAm to dismiss the petition for review. If you decide not to do so, please let me know.

AR, 38.

The email clearly recognizes that the gist of the parties' disagreement concerns the meaning of the term "compliance review" in the settlement agreement—i.e., FMCSA interprets it one way and TransAm interprets it another. Thus, on its face, the email appears to be nothing more than an effort to communicate to opposing counsel FMCSA's position regarding disputed rights and obligations under the settlement agreement.[4]

_____

[4] We agree with the parties that the informal nature of the email communication doesn't necessarily determine whether it was a "final order" within the meaning of § 2342(3)(A). *See, e.g.*, *Paskar v. U.S. Dep't of Transp.*, 714 F.3d 90, 97, 99 (2d Cir. 2013) (identifying cases in which courts treated agency letters as reviewable final orders); *Aerosource, Inc. v. Slater*, 142 F.3d 572, 577 (3d Cir. 1998) (stating "letters and other communications can be final orders depending upon the surrounding circumstances and other indicia of finality"); *Creed v. Nat'l Transp. Safety Board*, 758 F. Supp. 2d 1, 5 (D.D.C. 2010) (concluding letter from NTSB general counsel denying Creed's requests to avoid disclosing his medical information in a public meeting was "final order" reviewable under 49 U.S.C. § 1153(a) because "NTSB's decisions about which facts to publicly document" are "central to its investigative duties as mandated by Congress"). Instead, to determine whether the email may be characterized as a final order, we focus on the relevant regulations and the circumstances giving rise to the email. *See, e.g.*,

13

Apparently recognizing that the email's explicit language doesn't elevate it to "final order" status, TransAm argues the email's implicit meaning gets it there, albeit circuitously. TransAm points out that the issuance of a compliance review report is central to FMCSA's regulatory duties and that under 49 C.F.R. § 385.9(a), "[a] Compliance Review must contain a safety rating for the motor carrier." Pet'r Br. 19. Thus, TransAm suggests that FMCSA's email—which explicitly refused to issue a third amended compliance review report expressly identifying TransAm's upgraded satisfactory rating—implicitly signaled the agency's refusal to comply with § 385.9(a). According to TransAm, this implicit refusal elevates FMCSA's email to "final order" status.

TransAm correctly identifies § 385.9(a) as governing FMCSA's duty to assign a safety rating following a compliance review. That regulation states,

> Following a compliance review of a motor carrier operation, the FMCSA, using the factors prescribed in § 385.7 as computed under the Safety Fitness Rating Methodology set forth in appendix B of this part, shall determine whether the present operations of the motor carrier are consistent with the safety fitness standard set forth in § 385.5, and assign a safety rating accordingly.

TransAm reads too much into this regulation. TransAm's interpretation implicitly suggests § 385.9(a) requires FMCSA to issue an amended compliance review report reflecting an upgraded rating any time it grants a motor carrier relief through the

---

*Weinberger v. Salfi*, 422 U.S. 749, 763-67 (1975) (interpreting meaning of phrase "final decision"—a phrase left undefined in direct-review provision of Social Security Act—by looking to regulations establishing administrative review process).

administrative review process or provides an amended compliance review report pursuant to the terms of a settlement agreement. We see no such requirement in § 385.9(a)'s plain text, and TransAm fails to point us to any other regulations imposing such a requirement.

Moreover, both the broader regulatory framework within which FMCSA operates and the procedural facts in this case demonstrate the flaw in TransAm's argument. Specifically, more than three years ago, FMCSA fulfilled its obligations under § 385.9(a) by performing an on-site compliance review of TransAm's headquarters and assigning TransAm a proposed conditional safety rating. FMCSA further complied with its regulatory duties by providing TransAm with written notice of that proposed rating, considering TransAm's administrative challenges to that proposed rating, and issuing a written decision finally disposing of TransAm's challenges. *See* 49 U.S.C. § 31144; 49 C.F.R. §§ 385.3-385.17 (outlining FMCSA's duties to assess motor carrier safety fitness, assign safety fitness ratings, provide written notice of compliance review results, and consider administrative challenges to those results).

Importantly, TransAm sought judicial review of that written decision when it filed its second petition for judicial review in this court. And, but for the parties' joint stipulation of dismissal, this court could have reviewed that final decision[5] to determine

---

[5] Other circuits have assumed without deciding that FMCSA written decisions finally disposing of administrative challenges to safety fitness ratings are subject to review under the Hobbs Act. *See, e.g.*, *Multistar Indus., Inc. v. U.S. Dep't Transp*, 707 F.3d 1045, 1052-53(9th Cir. 2013) (exercising Hobbs Act jurisdiction to review "FMCSA's denial of Multistar's petition for administrative review," which "upheld the 'unsatisfactory' rating, and therefore represented the 'consummation of the agency's decisionmaking process' on the rating matter" (quoting *Hells Canyon Pres. Council v.*

15

whether it was arbitrary, capricious, an abuse of discretion, or otherwise unlawful. *See* 5 U.S.C. § 706 (explaining APA scope of review and remedies); *see also Midwest Crane and Rigging, Inc.*, 603 F.3d at 840 (reviewing FMCSA order to determine whether it was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'" as provided in 5 U.S.C. § 706(2)(A)). Instead, TransAm chose to dismiss its petition for judicial review as consideration for the parties' settlement agreement.

Thus, TransAm consciously chose not to pursue judicial review of a written decision signed by FMCSA's Assistant Administrator memorializing the agency's determination that TransAm had received all the administrative relief it was entitled to receive regarding its challenges to the assigned conditional safety rating. Importantly, the path to that agency decision—from compliance review and assignment of a proposed safety rating to FMCSA's written decision issued at the end of the administrative review process—was entirely consistent with § 385.9(a) and the administrative review process outlined in §§ 385.11 through 385.17.

Instead, through the instant petition, TransAm sought this court's review of an email from FMCSA's counsel memorializing the agency's position that it had complied with its obligations under the settlement agreement. Unquestionably, the path to this agency decision differs significantly from the path to the final decision discussed above. Most notably, before TransAm dismissed its second petition for review, it advised this

*U.S. Forest Serv.*, 593 F.3d 923, 930 (9th Cir. 2010))); *A.D. Transport Express, Inc. v. United States*, 290 F.3d 761, 765-66 (6th Cir. 2002) (exercising Hobbs Act jurisdiction to review motor carrier's petition for review of FMCSA order affirming assignment of "conditional" safety rating and denying carrier's request for an upgraded rating).

court of the parties' dispute over the settlement agreement but nonetheless dismissed the petition. Almost immediately thereafter, TransAm filed the instant petition for review. Yet between TransAm's dismissal of the second petition challenging the agency's final action and the instant petition challenging the agency's email, no agency action occurred—there was no intervening compliance review, no new assigned safety rating, no administrative challenge to a proposed or final safety rating, and no written decision from FMCSA finally determining a challenge to a safety rating. Instead, in the instant petition, TransAm presented us with a string of emails between TransAm and the agency's counsel culminating in FMCSA's email—an email TransAm now asserts is a "final order."

The lack of any FMCSA activity pursuant to the relevant regulatory framework— a framework which defines and gives meaning to the term "final order"—weighs heavily in favor of our conclusion that agency counsel's email was not a final order subject to this court's review. Nor are we persuaded that TransAm's decision to forego judicial review of FMCSA's final decision in lieu of the settlement agreement somehow transformed FMCSA's subsequent email—expressing the agency's position that it complied with the terms of that agreement—into a "final order." Thus, we reject TransAm's reliance on § 385.9(a) and we conclude FMCSA's email is not a "final order" within the meaning of § 2342(3)(A).

TransAm's briefing and statements at oral argument only fortify this conclusion. As TransAm's counsel candidly conceded at oral argument, TransAm's instant petition

17

for review concerns a settlement agreement.[6] Distilled to its essence, TransAm's petition seeks an order from this court directing FMCSA to issue a third amended compliance review report expressly identifying TransAm's satisfactory safety rating because TransAm believes that *the terms of the parties' settlement agreement* require such action.

While FMCSA is legally obligated to comply with the terms of the settlement agreement, that obligation arises from its status as a party to the agreement, *not* from its status as an administrative agency. Thus, although FMCSA's alleged failure to comply with the terms of the settlement agreement may provide the impetus for a breach of contract claim,[7] it does not provide TransAm with a "final order" subject to direct review in this court under 28 U.S.C. § 2342(3)(A).

Finally, TransAm suggests it "may have no remedy other than" this petition for review to obtain relief from FMCSA's alleged breach of the settlement agreement. Pet'r Br. 17. But we need not and cannot consider whether TransAm has alternative avenues through which to seek relief for the alleged breach of the settlement agreement. Nor may

---

[6] More specifically, TransAm's petition for review concerns FMCSA's alleged breach of the parties' settlement agreement. *See* Pet'r Third Pet. for Rev., 1 (seeking "review of the final decision of the [FMCSA] refusing to issue an amended Compliance Review *pursuant to a fully-executed settlement agreement* with TransAm" (emphasis added)); Pet'r Memo. on Jurisdiction, 2 ("This is an appeal of the FMCSA's *refusal to comply with that settlement agreement*." (emphasis added)); Pet'r Br., 19 ("[T]he FMCSA's refusal to issue a new Compliance Review was a *breach of the Settlement Agreement*." (emphasis added)); *Id*. at 20-21 (suggesting "the Court *should hold the FMCSA accountable to its sole obligation under the contract* and grant TransAm relief in the form of an order directing the FMCSA to issue a full amended Compliance Review" (emphasis added)).

[7] As discussed, TransAm has filed an action in district court alleging the agency breached the settlement agreement and asserting other claims. *See supra* note 3.

we contemplate the likely success of any such efforts. Instead, the only question before us is whether we possess jurisdiction under the Hobbs Act to consider TransAm's claim in this case. Regardless of whether TransAm can seek relief elsewhere, we cannot ignore the plain language of the Hobbs Act limiting our review to "final orders" issued under enumerated statutes. Nor can we ignore the unusual procedural path of the instant petition, which fortifies our conclusion that FMCSA's email was not a "final order" under the Hobbs Act. *See, e.g.*, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) (noting that "a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists . . . ."); *Brodsky v. U.S. Nuclear Regulatory Comm'n*, 578 F.3d 175, 180 (2d Cir. 2009) (noting "[t]he Supreme Court has commanded 'strict fidelity to the[] terms' of judicial review provisions that create jurisdiction, such as those contained in the Hobbs Act" (quoting *Stone v. INS*, 514 U.S. 386, 405 (1995))).

Because FMCSA's email expressing the agency's refusal to issue a third amended compliance review report pursuant to the settlement agreement was not a "final order" within the meaning of 28 U.S.C. § 2342(3)(A), we lack subject matter jurisdiction. Consequently, we dismiss TransAm's petition for review.

**III.** **Because we lack jurisdiction over TransAm's petition for review, we also dismiss TransAm's motion to transfer the petition to district court under 28 U.S.C. § 2347(b)(3).**

When it filed its petition for review, TransAm also filed a motion requesting that we transfer the petition to the district court pursuant to 28 U.S.C. § 2347(b)(3). But we agree with FMCSA that transfer under § 2347(b)(3) is inappropriate because that provision operates only if we have jurisdiction over the petition for review under

19

§ 2342(3)(A). Because we lack jurisdiction under § 2342(3)(A), we also dismiss the motion for transfer under § 2347(b)(3).

## CONCLUSION

We dismiss TransAm's petition for review for lack of jurisdiction and dismiss its motion to transfer on that same basis.