IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 4, 2019 Session

## ABDIGHANI K. HASHI v. PARKWAY XPRESS, LLC ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 70849     Howard W. Wilson, Judge**

_____

### No. M2018-01469-COA-R3-CV

_____

A forklift operator suffered injuries while operating his forklift within the confines of the trailer of a tractor-trailer. He sued the John Doe operator of the tractor-trailer, a trucking company, and a freight broker. Both the trucking company and the freight broker moved for summary judgment. The trial court granted the motions, dismissing the claims against them. On appeal, the forklift operator claims that some of the evidence filed in support of the motions for summary judgment was inadmissible and that there were disputed issues of material fact that precluded summary judgment. We conclude that the trial court properly granted summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Vakessha Hood-Schneider, Nashville, Tennessee, for the appellant, Abdighani K. Hashi.

Michael J. Vetter, Sr. and Lance Thompson, Nashville, Tennessee, for the appellees, Parkway Xpress, LLC and Total Quality Logistics, LLC.

## OPINION

### I.

Abdighani Hashi loaded and unloaded tractor-trailers at Essex Technology Group's distribution center in La Vergne, Tennessee. On February 2, 2015, Mr. Hashi was using a forklift to move pallets inside a trailer when the tractor-trailer unexpectedly

moved. The movement caused Mr. Hashi's forklift, along with Mr. Hashi, to fall from the trailer to the ground. The fall injured his lower back and required medical treatment.

In the Circuit Court for Rutherford County, Mr. Hashi filed suit against John Doe, the unknown driver of the tractor-trailer, Parkway Xpress, LLC, and Total Quality Logistics, LLC. The complaint alleged that John Doe was an employee of Parkway Xpress and that Parkway Xpress was vicariously liable for John Doe's negligence. The complaint described Total Quality Logistics as the "truck broker that hired Parkway Xpress . . . for the job during which [Mr. Hashi] was injured." The complaint alleged that Total Quality Logistics failed "to use due diligence in its selection, instruction, and supervision of Parkway Xpress." The complaint further alleged that Total Quality Logistics was vicariously liable for its agent Parkway Xpress.

Parkway Xpress and Total Quality Logistics filed separate motions for summary judgment. Parkway Xpress argued that summary judgment was appropriate because it was not the owner or operator of the tractor-trailer in which Mr. Hashi was working when he was injured. Parkway Xpress acknowledged making a delivery to the distribution center on February 2, but it claimed to have arrived at 6:00 a.m. and departed at 7:08 a.m. Mr. Hashi admitted that his accident occurred at 1:20 in the afternoon. Parkway Xpress also contended that the driver of the tractor-trailer in which Mr. Hashi was working was Jeremy Kie, who was not an employee of Parkway Xpress.

In support of its motion, Parkway Xpress filed the affidavit of Benjamin Kadic, the president of Parkway Xpress. He declared on personal knowledge that Parkway Xpress made its delivery to the distribution center at 6:00 a.m., departing at 7:08 a.m. Mr. Kadic also denied that Mr. Kie was a Parkway Xpress employee. Attached to the affidavit was a bill of lading showing the Parkway Xpress truck arriving at the distribution center at 6:00 a.m. and departing at 7:08 a.m. Parkway Xpress also provided business records produced by Essex Technology Group in response to a subpoena. The subpoenaed records included several incident reports identifying the driver of the tractor-trailer in which Mr. Hashi was working as Mr. Kie. Finally, Parkway Xpress provided a portion of the transcript from Mr. Hashi's deposition in which he was unable to identify the trucking company or the tractor-trailer involved in his accident.

In its motion, Total Quality Logistics claimed to be a freight broker. It explained that freight brokers contract with motor carriers to arrange for the transportation of freight at the request of customers needing such services. So "even assuming all allegations as true[,]" Total Quality Logistics would have "at most, merely contracted with the alleged John Doe truck driver's employer." It also explained that it "did not employ, control, select, or hire" the John Doe driver. Total Quality Logistics supported these assertions with the affidavit of Marc Bostwick, Total Quality Logistics' risk manager.

Mr. Hashi responded that there were genuine issues of material fact that prevented the court from granting summary judgment. He identified four. First, he contended that there was a factual dispute concerning the nature of the relationship between Total Quality Logistics and Parkway Xpress. In Mr. Hashi's words, "[j]ust because a document states that it is a 'Broker/Carrier Agreement' does not mean that there was, in fact, a broker/carrier agreement between the Defendants." Second, he contended that there was a factual dispute over Jeremy Kie's employment, despite the affidavit of Mr. Kadic. Third, he contended that there was a factual dispute over Parkway Xpress's involvement in the accident. Mr. Hashi pointed out that, when he requested a copy of any contracts between Total Quality Logistics and any other defendant "regarding the scope and use of the vehicle involved in the accident," Total Quality Logistics produced its broker/carrier agreement with Parkway Xpress. Finally, he disputed whether Total Quality Logistics had an agency relationship with the driver involved in the accident.

In responding, Mr. Hashi relied on the response of Total Quality Logistics to one of his requests for production of documents and a bill of lading Parkway Xpress filed in support of its motion for summary judgment. Mr. Hashi also made several evidentiary objections to submissions of Parkway Xpress and Total Quality Logistics. He challenged both affidavits and the documents subpoenaed from Essex Technology Group.

The trial court granted summary judgment to both Parkway Xpress and Total Quality Logistics. As to Parkway Xpress, the court found that Mr. Hashi "was allegedly injured at 1:20 a.m." and that "Parkway Xpress arrived at the distribution center at approximately 6:00 a.m. . . . and departed at approximately 7:08 a.m." The court also found that "Jeremy Kie was the driver of the truck that was allegedly involved in the Plaintiff's accident[,]" and that Jeremy Kie was not "an employee of Parkway Xpress." The court concluded that Parkway Xpress was "not a responsible party, was not involved in [Mr. Hashi's] accident, and [was] not liable to" Mr. Hashi. And the court concluded that Total Quality Logistics could not "be liable to Mr. Hashi because [Total Quality Logistics] did not employ, control, select, or hire the driver that allegedly caused [Mr. Hashi's] accident." The court also certified the judgment as final. *See* Tenn. R. Civ. P. 54.02.

**II.**

On appeal, Mr. Hashi claims summary judgment was inappropriate "because there were genuine issues of material facts in dispute and the evidence used to support said motions was inadmissible." Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine material factual issues exist and that it is, therefore, entitled to judgment as a

3

matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, the burden shifts to the nonmoving party to "demonstrate . . . that there is a genuine, material fact dispute to warrant a trial." *Id.*

Here, the parties moving for summary judgment do not bear the burden of proof at trial. Thus, the burden of production could be satisfied "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate," rather the movant must set forth specific material facts as to which the movant contends there is no dispute. *Id.*

If a motion for summary judgment is properly supported, the nonmoving party must then come forward with something more than the allegations or denials of its pleadings. *Id.* at 265. The nonmoving party must "by affidavits or one of the other means provided in Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Id.* (quoting Tenn. R. Civ. P. 56.06).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Tennessee Rule 56 have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763. We consider each motion for summary judgment separately.

## A. Parkway Xpress

Mr. Hashi's claims against Parkway Xpress are premised on the allegation that the driver of the tractor-trailer was Parkway Xpress's employee and operating the tractor-trailer with its permission. Although his complaint did not identify the driver, at oral argument, Mr. Hashi's counsel conceded that there was no dispute that the driver was Mr. Kie. Under the doctrine of respondeat superior, employers are "vicariously liable for the torts their employees commit while acting within the scope of their employment." *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992). To hold an employer liable under the doctrine, a plaintiff must prove "(1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred." *Id.* A plaintiff who fails to establish an agency or employment relationship between an alleged tortfeasor and a defendant is generally

barred from recovering under a theory of vicarious liability. *See Harper v. Churn*, 83 S.W.3d 142, 148 (Tenn. Ct. App. 2001) (upholding directed verdict for defendant because plaintiffs' evidence did "not indicate . . . an agency or employment relationship that would impose liability").

Relying on the affidavit of its president, Mr. Kadic, Parkway Xpress denied that Mr. Kie was its employee. Mr. Hashi challenges both the admissibility and credibility of Mr. Kadic's affidavit. In substance, if not necessarily in form, evidence filed "in support [of] a motion for summary judgment must be admissible." *Shipley v. Williams*, 350 S.W.3d 527, 564-65 & n.12 (Tenn. 2011) (Koch, J., concurring in part and dissenting in part); *see also Byrd*, 847 S.W.2d at 215-16 ("[T]he facts on which the nonmovant relies must be admissible at the trial but need not be in admissible form as presented in the motion (otherwise an affidavit, for example, would be excluded as hearsay).").

> To be admissible, evidence at the summary judgment stage must satisfy the requirements of the Tennessee Rules of Evidence, as well as any other requirements controlling the admissibility of particular types of evidence. Thus, evidence that would be substantively inadmissible at trial would likewise be inadmissible at the summary judgment stage.

*Shipley*, 350 S.W.3d at 565 (Koch, J., concurring in part and dissenting in part). An abuse of discretion standard applies to decisions regarding the admissibility of evidence filed in support of or in opposition to motions for summary judgment. *Id.* at 552 (majority opinion).

The trial court did not abuse its discretion in relying on Mr. Kadic's affidavit for the fact that Mr. Kie was not an employee of Parkway Xpress. Mr. Hashi argues that Mr. Kadic's statement that he has personal knowledge of the facts in his affidavit is mere "boilerplate language." Affidavits in support of or in opposition to a motion for summary judgment must "be made on personal knowledge." Tenn. R. Civ. P. 56.06.; *see also* Tenn. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Ordinarily an affidavit should explain the basis for an affiant's personal knowledge, but in some instances, "personal knowledge can be reasonably inferred based on the affiant's position." *Wells Fargo Bank v. Hammond*, 22 N.E.3d 1140, 1147 (Ohio Ct. App. 2014); *see also Synovus Bank v. Paczko*, No. M2014-00897-COA-R3-CV, 2015 WL 3455965, at *4 (Tenn. Ct. App. May 29, 2015). We conclude that Mr. Kadic's personal knowledge of who Parkway Xpress employed could be reasonably inferred based on his position as president of the company.

Mr. Hashi also argues that Mr. Kadic's affidavit is not credible, noting that showing an affiant's bias, prejudice, or interest may create a genuine issue of fact. Mr. Hashi points out that "both [Total Quality Logistics] and Parkway Xpress have an

interest in the outcome of the case and are biased towards each other." But to warrant a denial of summary judgment, credibility questions "must r[ise] to a level higher than the normal credibility questions that arise whenever a witness testifies." *Hepp v. Joe B's, Inc.*, No. 01A01-9604-CV-00183, 1997 WL 266839, at *3 (Tenn. Ct. App. May 21, 1997). For instance, credibility questions might preclude summary judgment if "a witness's credibility has been specifically challenged" or if the record contains "clear evidence of a witness's lack of credibility." *Id.* (citing *Knapp v. Holiday Inns, Inc.*, 682 S.W.2d 936, 943 (Tenn. Ct. App. 1984) and *Burgess v. Harley*, 934 S.W.2d 58, 68 (Tenn. Ct. App. 1996)). A party's interest in the outcome of a case does not create a higher than normal credibility question. *See Hepp*, 1997 WL 266839 at *3. At best, Mr. Hashi has made only a generalized attack on Mr. Kadic's credibility.

We conclude that Parkway Xpress met its summary judgment burden. It presented evidence showing that it did not employ the driver involved in Mr. Hashi's accident. *See Rye*, 477 S.W.3d at 264 (noting that moving party satisfies its burden of production by affirmatively negating an essential element of nonmoving party's claim). So the burden fell on Mr. Hashi to show some other basis for imposing liability on Parkway Xpress. Mr. Hashi failed to do so. Instead, Mr. Hashi claimed that Total Quality Logistics "implicated Parkway Xpress as the carrier involved" by its response to a request for production of documents. Having reviewed the response, we conclude it falls short of creating a genuine, material fact dispute for trial.

B. Total Quality Logistics

Mr. Hashi's claims against Total Quality Logistics are premised on Parkway Xpress's liability, which Mr. Hashi failed to show. But Total Quality Logistics did not seek summary judgment on the basis that Parkway Xpress was not liable under the undisputed facts. Instead Total Quality Logistics submitted that it could not be liable for Mr. Hashi's injuries even if there was some basis for imposing liability on Parkway Xpress. So we review the grant of summary judgment to Total Quality Logistics on that basis.

Assuming that Parkway Xpress were liable, Mr. Hashi claimed that Total Quality Logistics was also liable because Parkway Xpress was acting as its agent or Total Quality Logistics was negligent in hiring Parkway Xpress to transport freight for Essex Technology Group. A principal is "vicariously liable for the negligent acts of its agent when the acts are within the actual or apparent scope of the agent's authority." *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 105 (Tenn. 2010). In Tennessee, an agency relationship "does not require an explicit agreement, contract, or understanding between the parties." *White v. Revco Disc. Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000). Instead, agency "includes every relationship in which one person acts for or represents another." *Id.* (quoting *Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247, 253 (Tenn. Ct. App. 1982)). Whether an agency relationship exists "is a question of fact

6

under the circumstances of the particular case; and whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreement or acts." *Id.* (quoting *McCay v. Mitchell*, 463 S.W.2d 710, 715 (Tenn. Ct. App. 1970)). The party alleging the existence of an agency relationship has the burden of proving it exists. *Sloan v. Hall*, 673 S.W.2d 548, 551 (Tenn. Ct. App. 1984).

A negligent hiring claim requires a plaintiff to establish "in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job." *Heflin v. Iberiabank Corp.*, 571 S.W.3d 727, 737 (Tenn. Ct. App. 2018) (quoting *Bazemore v. Performance Food Grp., Inc.*, 478 S.W.3d 628, 638-39 (Tenn. Ct. App. 2015)), *perm. app. denied*, (Tenn. June 8, 2018).  Our courts "recognize the negligence of an employer in the selection and retention of . . . independent contractors." *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008).  To establish a negligent hiring claim in the selection of an independent contractor, a plaintiff must show "that the employer either knew, or by the exercise of reasonable care might have ascertained, that the independent contractor was not qualified to perform the work for which he was contracted." *Marshalls of Nashville, Tenn., Inc. v. Harding Mall Assocs., Ltd.*, 799 S.W.2d 239, 243 (Tenn. Ct. App. 1990).

In its motion for summary judgment, Total Quality Logistics asserted that it had an independent contractor relationship with Parkway Xpress, not an agency relationship. Total Quality Logistics also asserted that it used reasonable care in contracting with Parkway Xpress as a motor carrier.  To establish these facts, Total Quality Logistics relied on an affidavit from its risk manager, Mr. Bostwick.

Mr. Hashi makes the same credibility challenge to Mr. Bostwick's affidavit that he made to Mr. Kadic's affidavit.  Again, we conclude that Mr. Hashi's credibility questions do not rise above "the normal credibility questions that arise whenever a witness testifies." *Hepp*, 1997 WL 266839 at \*3.  So Mr. Hashi's challenge to the affidavit is unavailing.

Mr. Hashi also argues that, even considering Mr. Bostwick's affidavit, disputed material facts remain.  We disagree.  Mr. Bostwick stated that Total Quality Logistics is a broker that "contacts a licensed motor carrier who can satisfy the customer's needs and arranges for the transportation of . . . freight."[1]  Total Quality Logistics "does not select or control the route that motor carriers use to transport their loads and each motor carrier is expected to plan the route, use its own vehicles, tools and equipment and to make any

---

[1] Federal law defines a "broker" as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation."  49 U.S.C. § 13102(2) (2017).

required pickups and deliveries." Thus, Total Quality Logistics did not control the means of Parkway Xpress's delivery to Essex Technology Group. *See Chapman v. Evans*, 261 S.W.2d 132, 133 (Tenn. Ct. App. 1953) (holding that truck owner and driver were not freight broker's agents because broker had no "right to control [the truck owner] or [the truck driver] in so far as their hauling . . . except as to the results").

As to the negligent hiring claim, Mr. Bostwick stated that "Parkway Xpress is a motor carrier authorized by the F[ederal Motor Carrier Safety Administration][2] to transport freight within the United States." Mr. Bostwick also noted that "part of the contracting process" between Total Quality Logistics and Parkway Xpress required Parkway Xpress to provide "documentation indicating that it was a licensed motor carrier."

Mr. Hashi offered no evidence in response to any of the facts offered by Total Quality Logistics. Instead, on appeal, he faults Mr. Bostwick's affidavit for not addressing the relationship, if any, between Total Quality Control and Mr. Kie. But Mr. Hashi never alleged that Total Quality Logistics was vicariously liable for the actions of the driver of the tractor-trailer. Our inquiry on summary judgment is limited to the allegations raised in the pleadings. *See Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955) ("[A] judgment or decree which is beyond the fair scope of the pleadings is void."); *see also Randolph v. Meduri*, 416 S.W.3d 378, 384 (Tenn. Ct. App. 2011) ("[T]he parties ought not to be allowed to charge one case in their pleadings and prove a case substantially different.") (quoting *Am. Lead Pencil Co. v. Nashville C. & St. L. Ry.*, 134 S.W. 613, 615 (Tenn. 1911)).

## III.

We conclude that there was no genuine issue as to any material fact and that Parkway Xpress, LLC and Total Quality Logistics, LLC were both entitled to a judgment of dismissal as a matter of law. So we affirm the grant of summary judgment to Parkway Xpress and Total Quality Logistics and remand the case for such further proceedings as may be necessary and consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE

---

[2] The Federal Motor Carrier Safety Administration "is an administrative agency within the Department of Transportation." *TransAm Trucking, Inc. v. FMCSA*, 808 F.3d 1205, 1207 (10th Cir. 2015). The FMCSA "is responsible for prescribing federal standards for safety inspections of motor vehicles and assigning safety fitness ratings to owners and operators of commercial motor vehicles." *Midwest Crane & Rigging, Inc. v. FMCSA*, 603 F.3d 837, 839 (10th Cir. 2010) (citations omitted).